Kenneth R. Pedroza (SBN 184906)
kpedroza@colepedroza.com
Dana L. Stenvick (SBN 254267)
dstenvick@colepedroza.com
COLE PEDROZA LLP
2670 Mission Street, Suite 200
San Marino, CA 91108
Tel: (626) 431-2787
Fax: (626) 431-2788

Attorneys for Defendants In Intervention
UCSF BENIOFF CHILDREN'S HOSPITAL OAKLAND
and FREDERICK S. ROSEN, M.D.

G. Patrick Galloway (SBN 49442)
pgalloway@glattys.com
Joseph E. Finkel (SBN 167397)
jfinkel@glattys.com
GALLOWAY, LUCCHESE, EVERSON & PICCHI
A Professional Corporation
2300 Contra Costa Blvd., Suite 350
Pleasant Hill, California  94523-2398
Tel: (925) 930-9090
Fax: (925) 930-9035

Attorneys for Defendant In Intervention
UCSF BENIOFF CHILDREN'S HOSPITAL OAKLAND

Thomas E. Still (SBN 127065)
tstill @hinshaw-law.com
Jennifer Still (SBN 138347)
jstill@hinshaw-law.com
HINSHAW, MARSH, STILL & HINSHAW LLP
12901 Saratoga Avenue
Saratoga, California  95070
Tel: (408) 861-6500
Fax: (408) 257-6645

Attorneys for Defendant in Intervention
FREDERICK S. ROSEN, M.D.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAHI MCMATH, a minor, NAILAH WINKFIELD, an individual, as parent, as guardian, and as next friend of Jahi McMath, a minor, | Case No. 3:15-cv-06042-HSG<br>[Hon. Haywood S. Gilliam, Jr.] |
| Plaintiffs, | **NOTICE OF MOTION BY CHILDREN'S HOSPITAL AND DR. ROSEN TO DISMISS PLAINTIFFS' COMPLAINT AND JOINDER IN MOTIONS BY ALAMEDA COUNTY AND STATE OF CALIFORNIA TO DISMISS OR STAY** |
| v. | |
| STATE OF CALIFORNIA; COUNTY OF ALAMEDA, et al., | |
| Defendants. | Date Filed:  December 23, 2015<br>Hearing:     July 28, 2016<br>Time:        2:00 p.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, July 28, 2016 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 10 on the 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California.

UCSF Benioff Children's Hospital Oakland ("Children's Hospital") and Dr. Frederick S. Rosen ("Dr. Rosen") will and hereby do move to dismiss plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Additionally, Children's Hospital and Dr. Rosen join in The County Defendants' Motion to Dismiss the plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the arguments and authorities set forth therein. Children's Hospital and Dr. Rosen also join in the County Defendants' Request for Judicial Notice In Support Of Motion To Dismiss Complaint For Declaratory And Injunctive Relief.

1    Finally, Children's Hospital and Dr. Rosen join in the State of California's Motion to Dismiss

2  under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or In The Alternative, To Stay the Action,

3  and the arguments and authorities set forth therein.  Children's Hospital and Dr. Rosen also join in the

4  County Defendants' Request for Judicial Notice In Support Of Motion To Dismiss Complaint For

5  Declaratory And Injunctive Relief.

6    This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities,

7  Children's Hospital and Dr. Rosen's Request for Judicial Notice, the Motions to Dismiss filed by the

8  County Defendants and the State of California and those Defendants' respective Requests for Judicial

9  Notice.

10

11   DATED: May 20, 2016                    Respectfully submitted,

12                                          COLE PEDROZA LLP

13

14                                          /s/ *Dana L. Stenvick*
                                            Dana L. Stenvick
15                                          Attorney for Defendants UCSF BENIOFF
                                            CHILDREN'S HOSPITAL OAKLAND and
16                                          FREDERICK S. ROSEN, M.D.

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

    A.    Jahi McMath Was Declared Dead At Children's Hospital Oakland ..................... 2

    B.    Issue Of Death Fully Adjudicated In Alameda Superior Court ............................ 3

         1.    The Alameda Superior Court Appointed An Independent Medical
             Expert To Evaluate McMath ...................................................................... 4

         2.    A Comprehensive Evidentiary Hearing Was Held To Determine
             Whether McMath Was Alive ...................................................................... 4

         3.    A Final Order And Judgment Were Entered Finding McMath Is
             Deceased Under California Law .................................................................. 6

    C.    Plaintiffs Filed A Series Of Legal Actions To Challenge Death Declaration ........ 6

         1.    The 2013 Writ Petition .............................................................................. 7

         2.    The First Federal Action ............................................................................ 7

         3.    The Petition For Writ Of Error Corum Nobis ............................................. 7

         4.    The Damages Litigation And Related Petition For Writ Of Mandate .......... 9

         5.    The Second Federal Action ...................................................................... 10

III.  RELEVANT LEGAL STANDARDS .......................................................................... 10

    A.    Motion To Dismiss Under Rule 12(b)(6) ........................................................... 10

    B.    The Uniform Determination of Death Act ......................................................... 11

IV.  THIS COURT SHOULD DECLINE TO EXERCISE AUTHORITY UNDER
     THE DECLARATORY JUDGMENT ACT ................................................................. 12

V.   THIS CASE SHOULD BE DISMISSED TO PRECLUDE PLAINTIFFS
    FROM MAKING A COLLATERAL ATTACK ON A FINAL JUDGMENT
    FINDING MCMATH IS DEAD ................................................................................. 14

A.  Collateral Estoppel Prevents Re-Litigation Of Issues Related To Brain Death ............................................................................................ 15

1.  Issue Of Brain Death In This Case Is Identical To The Issue Litigated In Prior Probate Action ................................................. 16

2.  Issue Of Brain Death Was Actually Litigated In Prior Action .................. 17

3.  Issue Of Brain Death Was Necessarily Litigated In Prior Action ............. 17

4.  Issue Of Brain Death Was Decided On The Merits In Prior Action .......... 18

5.  Winkfield Was A Party To Prior Action ..................................... 18

B.  The Final Order And Judgment Entered In Probate Action Must Be Afforded Preclusive Effect ................................................... 19

C.  There Is No Legal, Medical Or Equitable Basis To Permit Relitigation Of Death ............................................................................. 20

VI.   JOINDER TO COUNTY DEFENDANTS' MOTION TO DISMISS ............................ 23

VII.  JOINDER TO STATE OF CALIFORNIA'S MOTION TO DISMISS ......................... 24

VIII. CONCLUSION ............................................................................. 24

MOTION TO DISMISS                                                      3:15-cv-06042-HSG

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Abbott v. Michigan*

4        474 F.3d 324 (6th Cir.2007) ................................................................................ 14

5

*Allen v. McCurry*

6        449 U.S. 90 (1980) ................................................................................ 14, 15

7

*Balistreri v. Pacifica Police Dep't*

         901 F.2d 696 (9th Cir.1990) ................................................................................ 11

8

*Bell Atlantic Corp. v. Twombly*

9        550 U.S. 544 (2007) ................................................................................ 11

10

*Brillhart v. Excess Ins. Co. of Am.*

11       316 U.S. 491 (1942) ................................................................................ 12, 14

12

*Colorado River Water Conservation Dist. v. United States*

         424 U.S. 800 (1976) ................................................................................ 2, 24

13

*Continental Cas. Co. v. Robsac Indus.*

14       947 F.2d 1367 (9th Cir. 1991) ................................................................................ 13, 14

15

*Dority v. Superior Court*

16       145 Cal.App.3d 273, 193 Cal.Rptr. 288 (1983) ................................................................ 4

17

*Erickson v. Pardus*

18       551 U.S. 89 (2007) ................................................................................ 11

19

*Evans v. Pearson Enter., Inc.*

         434 F.3d 839 (6th Cir.2006) ................................................................................ 14

20

*Fairchild v. Bank of Am. Nat. Trust and Sav. Ass'n*

21       165 Cal.App.2d 477, 332 P.2d 101 (1958) ................................................................ 18

22

*Gottlieb v. Kest*

23       141 Cal.App.4th 110, 146 Cal.Rptr.3d 7 (2006) ................................................................ 15

24

*Hawkins v. Starosciak*

25       C 10-0248 JW PR, 2011 WL 3739038 (N.D. Cal. Aug. 24, 2011) ................................................ 14

26

*Heiser v. Super. Ct.*

         88 Cal.App.3d 276, 151 Cal.Rptr. 745 (1979) ................................................................ 18

27

*Huth v. Hartford Ins. Co. of the Midwest*

28       298 F.3d 800 (9th Cir.2002) ................................................................................ 12

MOTION TO DISMISS                                                    3:15-cv-06042-HSG

*In re Bissinger's Estate*
  60 Cal.2d 756, 388 P.2d 682 (1964) ............................................................. 19

*In re Est. of Redfield*
  193 Cal.App.4th 1526, 124 Cal.Rptr.3d 402 (2011) ................................. 18, 19

*Lucido v. Superior Court*
  51 Cal.3d 335, 795 P.2d 1223 (1990) ......................................................... 16

*Lunt v. Boris*
  87 Cal.App.2d 694, 197 P.2d 568 (1948) ................................................... 20

*Marin v. HEW, Health Care Fin. Agency*
  769 F.2d 590 (9th Cir.1985) ........................................................................ 15

*Melendres v. City of Los Angeles*
  40 Cal.App.3d 718, 115 Cal.Rptr. 409 (1974) ........................................... 20

*Migra v. Warren City School Dist. Bd. of Educ.*
  465 U.S. 75 (1984) ................................................................................. 14, 15

*Noel v. Hall*
  341 F.3d 1148 (9th Cir. 2003) ..................................................................... 24

*PAE Govt. Services, Inc. v. MPRI, Inc.*
  514 F.3d 856 (9th Cir. 2007) ....................................................................... 20

*Palma v. U.S. Industrial Fasteners, Inc.*
  36 Cal.3d 171, 681 P.2d 893 (1984) ............................................................. 9

*People v. Jackson*
  150 Cal.App.3d Supp. 1, 198 Cal.Rptr. 135 (1983) .................................... 19

*R.R. St. & Co. Inc. v. Transport Ins. Co.*
  656 F.3d 966 (9th Cir. 2011) .............................................................12, 13, 14

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir.2001) *amended,* 275 F.3d 1187 ............................... 11

*Syufy Enterprises v. City of Oakland*
  104 Cal.App.4th 869, 128 Cal.Rptr.2d 808 (2002) ..................................... 15

*Union P. R.R. Co. v. Santa Fe P. Pipelines, Inc.*
  231 Cal.App.4th 134, 180 Cal.Rptr.3d 173 (2014) ..................................... 20

*United States v. Geophysical Corp. of* Alaska
  732 F.2d 693 (9th Cir.1984) ........................................................................ 19

MOTION TO DISMISS                                             3:15-cv-06042-HSG

*Whittlesey v. Aiello*
   104 Cal.App.4th 1221, 128 Cal.Rptr.2d 742 (2002)............................................. 19

*Wilton v. Seven Falls Co.*
   515 U.S. 277 (1995).................................................................................... 12, 14

*Younger v. Harris*
   401 U.S. 37 (1971)...................................................................................... 11, 23


**STATUTES**

Cal. Health & Safety Code
   § 7180............................................................................................................... 11
   § 7181............................................................................................................... 12

Evidence Code
   § 402................................................................................................................... 5
   § 720................................................................................................................... 5

Federal Full Faith and Credit Statute, 28 U.S.C.
   § 1738............................................................................................................... 14

Federal Rule of Civil Procedure
   rule 12 ..................................................................................................... 2, 10, 24

N.J. Stat. Ann.
   § 26:6A-5.......................................................................................................... 22

Probate Code
   § 3200............................................................................................................... 16
   § 3201............................................................................................................... 16
   § 4600............................................................................................................... 16
   § 4766............................................................................................................... 16
   § 4770............................................................................................................... 16


**OTHER AUTHORITIES**

2 Witkin, Cal. Procedure (4th ed. 1996–1997) Jurisdiction,
   § 45, p. 586 ...................................................................................................... 19

MOTION TO DISMISS                                                    3:15-cv-06042-HSG

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

By this action, Plaintiffs have set the stage for three potentially conflicting judgments by three different courts on the issue of whether Jahi McMath is dead under California law.  Plaintiffs seek a judicial declaration from this federal court that McMath is alive in direct contravention to the Alameda Superior Court's Final Order and January 17, 2014 judgment that McMath met the statutory criteria for irreversible brain death and is therefore dead under California law, and despite currently pending litigation before the Alameda Superior Court in which the very same issue is set to be addressed.  Not only would the impact of conflicting judgments be detrimental to Frederick S. Rosen, M.D. ("Dr. Rosen") and UCSF Benioff Children's Hospital Oakland ("Children's Hospital") in their roles as defendants to the currently pending damages lawsuit, it would upset the generally accepted legal, medical and common sense standards by which our society distinguishes life from death.

On December 12, 2013, Jahi McMath ("McMath") was pronounced dead at Children's Hospital after suffering cardiac arrest following a surgical procedure to allegedly treat sleep apnea.  McMath's death was confirmed by the Alameda Superior Court through entry of a Final Order and Judgment on January 17, 2014 after a comprehensive evidentiary hearing on the issue of whether McMath met the criteria for death under California's Uniform Determination of Death Act, codified at Civil Code sections 7180 and 7181.  The Final Order and Judgment entered January 17, 2014 remains final and McMath remains legally deceased under California law.

Though McMath is legally deceased, actions have been impermissibly initiated in her name both here and in Alameda Superior Court as though she is alive.  Both in this case and in the pending Alameda Superior Court case, McMath seeks to prove that she did not, and does not, meet the statutory criteria for brain death.  For the reasons discussed in further detail below, there is no valid legal, medical or logical basis for revisiting the issue of whether McMath is dead as such issue has been fully and finally decided by a court of competent jurisdiction in accordance with California law.

Plaintiffs have failed to state a claim on which relief can be granted because the issue of whether McMath is dead under California law has been fully, and finally, litigated in Alameda Superior Court.

1

The issue of whether she is still dead cannot be litigated without disrupting the prior judgment concluding that McMath was, and is, irreversibly dead under California law set forth under the California Uniform Determination of Death Act, codified at Health and Safety Code sections 7180 and 7181.  The doctrines of *res judicata* and collateral estoppel apply and should be invoked to preclude plaintiffs from engaging in unnecessary duplicative litigation on the issue.  A dismissal on this basis is warranted under Federal Rule of Civil Procedure 12(b)(6).

If there were some valid basis for reconsidering the finality of McMath's death declaration, the issue should be addressed by the state courts, not this federal court.  Indeed, plaintiffs have admitted that the Alameda Superior Court has agreed to allow McMath to "allege and prove, with expert, scientific evidence, that today [McMath] does not meet California's definition of brain death…" (Request for Judicial Notice (RJN), Exh. DD (Plf's Opp. To Petition for Writ of Mandate), at p. 10.)  Thus, in the alternative to dismissing this action under the doctrines of *res judicata* and collateral estoppel, this Court should decline to exercise its discretion to consider plaintiffs' requests for declaratory judgment that McMath is not brain dead.

Alternatively, and as more fully set forth in Motions to Dismiss filed by the County of Alameda Defendants and the State of California, this Court has at its disposal a host of legal doctrines requiring dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the basis of abstention (the *Younger* doctrine) and lack of subject matter jurisdiction (the *Rooker-Feldman* doctrine).  In the alternative, and as set forth in the State of California's Motion to Dismiss, a stay of this proceeding may be affected under the *Colorado River* doctrine.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Jahi McMath Was Declared Dead At Children's Hospital Oakland

On December 9, 2013, Dr. Rosen performed a surgical procedure on McMath to allegedly treat sleep apnea.  (Docket No. 1 (Complaint), at ¶ 1; Request for Judicial Notice ("RJN"), Exh. S (First Amended Complaint), at ¶ 11.)  Hours later, McMath went into cardiac arrest and was placed on a ventilator at Children's Hospital.  (Docket No. 1 (Complaint), at ¶ 6.)  At least two physicians conducted separate examinations of McMath at Children's Hospital after she was placed on a ventilator, including

2

Robin Shanahan M.D., a board certified pediatric neurologist, and Scott Heidersbach, M.D., a board certified pediatric critical care physician.  (Docket No. 1 (Plaintiff's Complaint) at ¶ 6; RJN, Exh. D (Amended Order by Judge Grillo on 1/2/14), at p. 2, line 21 – p. 3, line 10.)  Both physicians independently concluded that McMath had suffered irreversible brain death caused by lack of oxygen to her brain and that there was thus no medical justification to provide any further medical treatment to McMath.  (*Ibid*; RJN, Exh. B (Children's Hospital Opp. To Ex Parte Petition for TRO) at p. 1, lines 22-24.)  Based upon these physicians' findings, McMath was pronounced dead at Children's Hospital on December 12, 2013.  (Docket No. 1, (Complaint), at p. 3, ¶ 8.)  Following legal proceedings detailed below, McMath's body was eventually transported to an undisclosed facility in New Jersey where it presumably remains on ventilator support. (*Id.* at ¶ 14.)

### B.   Issue Of Death Fully Adjudicated In Alameda Superior Court

After McMath was pronounced dead at Children's Hospital, plaintiff Nailah Winkfield filed an *ex parte* application in Alameda Superior Court captioned *Latasha Winkfield, et al. v. Children's Hospital Oakland, et al.*, Alameda Superior Court Case No. RP13-707598 (the "Probate Action") on December 20, 2013.  (RJN, Exhibit A, (Ex Parte Petition for TRO) at p. 2, lines 11-14; Exh. B (Children's Hospital Opp. To Ex Parte Petition for TRO) at p. 1, lines 22-24.)   In the Probate Action, Winkfield asked the Court to issue a temporary restraining precluding Children's Hospital from discontinuing ventilator and other life support to McMath based upon her belief that McMath was not dead because her heart appeared to continue beating spontaneously.  (*Ibid.*)   Winkfield also sought a permanent injunction mandating Children's Hospital provide further medical treatment to McMath, including placement of a gastric feeding tube, notwithstanding the fact that McMath had been declared dead under California law in accordance with accepted medical standards.  (*Ibid.*)

Children's Hospital opposed the *ex parte* application by arguing it had no duty to provide medical care or other related treatment to McMath, a legally deceased person.  (RJN, Exh. B (Children's Hospital Opp. To Ex Parte Petition for TRO).)  In support of its opposition, Children's Hospital submitted separate declarations by three physicians, each attesting that McMath had suffered irreversible brain death and was therefore dead as of December 12, 2013.  (RJN, Exh. B (Children's Hospital Opp.

To Ex Parte Petition for TRO, with Declarations of Sharon Williams, M.D., Robin Shanahan, M.D., and Robert Scott Heidersbach, M.D.))  Because hospitals in California are not obligated to provide medical treatment to dead bodies, (*see, e.g., Dority v. Superior Court,* 145 Cal.App.3d 273, 279, 193 Cal.Rptr. 288, 291 (1983)), Children's Hospital argued that it could not be compelled to provide further medical treatment to McMath.  In short, the Alameda Superior Court was required to decide whether McMath met the statutory criteria for brain death and was, in fact, dead under California law in order to rule on Winkfield's *ex parte* application to compel medical treatment.

### 1.    The Alameda Superior Court Appointed An Independent Medical Expert To Evaluate McMath

On December 23, 2013, Alameda Superior Court Judge Evelio Grillo appointed Paul Fisher, M.D., a board certified child neurologist, Chief of Child Neurology at Lucile Packard Children's Hospital and Professor of Child Neurology at Stanford University School of Medicine, to serve as the court's expert to independently evaluate and assess whether McMath met the criteria for irreversible brain death under Health and Safety Code section 7181.  (RJN, Ex. C (Case Management Order by Judge Grillo, Dec. 23, 2013), at p. 5, lines 22-23.)  Winkfield did not submit any names of physicians licensed to practice medicine in California to serve as an independent expert, but agreed Dr. Fisher was qualified to serve as an expert under section 7181.  (*Id.*, at p. 5, lines 17-19.)  Dr. Fisher conducted an examination of McMath on December 23, 2013 and concluded that McMath had suffered irreversible brain death and was therefore deceased.  (RJN, Ex. D (Amended Order 1/2/14) at p. 6, line 18 – p. 7, line 2.)  A detailed report of his examination and findings was included as part of the court's record.  (*Id.* at p. 6.)

### 2.    A Comprehensive Evidentiary Hearing Was Held To Determine Whether McMath Was Alive

Judge Evelio Grillo presided over a comprehensive hearing on December 24, 2013 to consider medical evidence and live expert testimony on the issue of whether McMath was dead under California law.   (RJN, Exh. D (Amended Order 1/2/14), at p. 6, lines 4 – 18.)

Dr. Fisher testified and was cross-examined by Winkfield's attorney at the December 24, 2013 evidentiary hearing.  (*Id.* at p. 6.)  Dr. Fisher testified that McMath was brain dead under accepted

medical standards, specifically those set forth in the Guidelines for Determination of Brain Death in Infants and Children: An Update of the 1987 Task Force Recommendation (the AAP Brain Death Guidelines). (*Id.* at pp. 6-7.) Winkfield's attorney cross-examined Dr. Fisher and questioned him on accepted medical standards for determining brain death in minors. (*Ibid.*) Winkfield's attorney then stipulated that Dr. Fisher had conducted his examination and made his brain death diagnosis in accord with accepted medical standards as required under sections 7180 and 7181 of the Health and Safety Code. (*Id.* at p. 6:22-23, 7:1.)

Robin Shanahan, M.D. also testified at the December 24, 2013 hearing. (*Id.* at p. 7.) Dr. Shanahan, a pediatric neurologist at Children's Hospital, testified that she examined McMath on December 11, 2013, and based upon her examination, had concluded McMath was, and continued to be, brain dead under the AAP Brain Death Guidelines. (*Id.*) Winkfield's attorney cross-examined Dr. Shanahan, but objected to the testimony and opinion given by Dr. Shanahan based upon lack of sufficient medical record evidence to conduct an appropriate cross-examination. (*Id.*) Judge Grillo overruled counsel's objection, noting that medical records were relevant to establishing cause of death, not the fact of death. (*Id.* at p. 7:16-20.) At issue in the Probate Action was whether McMath satisfied the criteria for death under the Health & Safety Code, not how or why she died. (*Id.* at p. 7:16-20, and p. 14:6-7.)

At various times during the Probate Action, Winkfield requested that Paul A. Byrne, M.D. be permitted to examine McMath, provide a second section 7181 opinion, provide expert testimony, and/or be allowed review McMath's medical records to assist in cross-examination. (*Id.* at p. 14.) Winkfield withdrew the request for Dr. Byrne to examine McMath and provide a second opinion. (*Id.* at p. 14:6-7.) Winkfield also did not pursue the request that Dr. Byrne provide expert testimony. (*Id.* at p. 14:7-8.) The court noted Dr. Byrne would likely not have qualified as an expert witness under Evidence Code section 720 if an Evidence Code section 402 hearing was held based upon Dr. Byrne's religious and philosophical approach to the definition of death and possibility that he would not be able to apply accepted medical standards, presumably those set forth in the AAP Brain Death Guidelines. (*Id.* at p. 14:8-15.)

MOTION TO DISMISS                                                    3:15-cv-06042-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In open court following the hearing on December 24, 2013, Judge Grillo found McMath had suffered irreversible brain death as of at least December 12, 2013 and was therefore dead under Health & Safety Code sections 7180 and 7181. (*Id.*, at p. 7.) The temporary restraining order was allowed to expire and Winkfield's Petition for Medical Treatment was denied. (*Id.*)

### 3. A Final Order And Judgment Were Entered Finding McMath Is Deceased Under California Law

Following the hearing, Judge Grillo issued an order on December 26, 2013, finding that McMath had suffered irreversible brain death and met the criteria for establishing death under Health & Safety Code sections 7180 and 7181 under the clear and convincing evidence standard, which was later amended, but not substantively, on January 2, 2014. (RJN, Exh. D (Amended Order 1/2/14), at p. 1, and p. 15, lines 17-22, and p. 16, lines 6-9.)

In the Amended Order, Judge Grillo provided a full account of the Petition, Children's Hospital's opposition, the appointment of Dr. Fisher, the evidence considered, the court's jurisdiction, the legal standards applied and the hearing itself. (RJN, Exh. D (Am. Order 1/2/14.) Judge Grillo found that "McMath had suffered brain death and was deceased as defined under Health and Safety Code sections 7180 and 7181" by "clear and convincing evidence." (*Id.*, at p. 16, lines 20-22.)

Judge Grillo entered a Final Judgment Denying Plaintiff's Petition for Medical Treatment in the Probate Action on January 17, 2014 based upon his finding that McMath "was deceased under Health and Safety Code sections 7180 and 7181." (RJN, Ex. E (Final Judgment Denying Petition for Medical Treatment); Exh. V, (Order Addressing Notice of Related Cases), at p. 2.) Winkfield never appealed the Final Order and Judgment.

### C. Plaintiffs Filed A Series Of Legal Actions To Challenge Death Declaration

Plaintiffs have filed a series of legal actions to challenge, both directly and indirectly, the Alameda Superior Court's Final Order and Judgment confirming that McMath is dead under California law, having met the statutory criteria for brain death in December 2013, including:

6

### 1.    The 2013 Writ Petition

On or about December 30, 2013, plaintiffs filed a Petition for Writ of Mandate in the action styled *J.M., et al. v. The Superior Court of Alameda County,* (Ct. of Appeal, 1st App. Dist., Case No. A140590) (the "2013 Writ Petition") requesting an emergency stay of Judge Grillo's December 30, 2013 Order and an order vacating and setting aside Judge Grillo's finding that McMath was dead. (RJN, Exh. F, (Petition For Writ of Mandate).)   The Court of Appeal granted a temporary stay and effectively ordered Children's Hospital to continue ventilator support for 24 hours so that the writ petition could be considered.  (*Ibid*.)   The Court of Appeal never had the opportunity to consider whether McMath satisfied the criteria for brain death because McMath's body was removed from Children's Hospital and the Petition was deemed moot.  (RJN, Exh. G, (Court of Appeal's Detailed Register of Actions).)

### 2.    The First Federal Action

Also on or about December 30, 2013, Winkfield filed a Complaint for Declaratory Relief and Request for Emergency Temporary Restraining Order and Injunctive Relief in the federal court action entitled *Latasha Winkfield v. Childrens Hospital Oakland, et al.*, United States District Court, Northern District (Oakland), Case No. 4:13-cv-05993-SBA (the "First Federal Action").  (RJN, Exh. H (First Federal Action Complaint).)  In this First Federal Action, Winkfield alleged an alternative placement for McMath had been secured at an undisclosed location, and that transport had been arranged on some unspecified date in the future.  (*Ibid*.)  Accordingly, Winkfield asked the federal court to compel Children's Hospital to provide McMath with nutritional feeding and care to maintain bodily functions. (*Ibid*.)  An emergency mandatory settlement conference was held in front of a Magistrate Judge on January 3, 2014 at which point the parties reached an agreement to enable McMath's removal to an outside facility.

### 3.    The Petition For Writ Of Error Corum Nobis

On September 30, 2014, Plaintiffs undertook efforts to re-open the Probate Case by filing a Memorandum Regarding Court's Jurisdiction To Hear Petition For Determination That McMath McMath Is Not Brain Dead in Alameda Superior Court.  (RJN, Exh. I (Memorandum Regarding Court's

7

MOTION TO DISMISS                                                    3:15-cv-06042-HSG

Jurisdiction).)  In the Memorandum, plaintiffs requested a further hearing to "provide new, conclusive evidence that McMath McMath is not 'brain dead.'…" (*Id.* at p. 1: 23-25.)  Also in the Memorandum, plaintiffs admit that Judge Grillo has jurisdiction over the issue and should decide that McMath is alive. (*Id.*, at p. 2:1-4.)  Notably, the "evidence" submitted here that McMath is not deceased under Health and Safety Code sections 7180 and 7181 is almost identical to that "evidence" attached to the plaintiffs' complaint in the instant case, including declarations by Philip De Fina, Ph.D., Calixto Machado, M.D., Charles Pretigiacomo, M.D., Elena B. Labkovsky, Ph.D., and D. Alan Shewmon, M.D., all dated in October 2014.  (RJN, Exhs. K, L, M, N, O, and P (Petition for Writ of Error and Declarations Filed In Support Thereof).)

Judge Grillo considered the memorandum and set a briefing schedule at a hearing on September 30, 2014.  Judge Grillo also invited amicus briefing from others who may be interested, including the County of Alameda and the Coroner's office.  (RJN, Ex. J (Memo. Order Re: Court's Jurisdiction To Determine Brain Death) at p. 4, lines 12-20.)  Plaintiffs thereafter filed their Petition for Writ of Error Corum Nobis to reverse the brain death determination previously entered by Final Order and Judgement in the Probate Action.  (RJN, Exhs. K, L, M, N, O, and P (Petition for Writ of Error and Declarations Filed In Support Thereof).)

On October 8, 2014, Judge Grillo appointed Dr. Fisher to again serve as the independent medical expert to opine on the issue of whether McMath was dead under California law.  (RJN, Exh. Q (Order Appointing Dr. Paul Fisher as Court Expert Witness).)  Dr. Fisher issued a report stating that he had reviewed the evidence submitted by Winkfield in connection with the Petition for Writ of Error, and that nothing in those submissions "provide[s] evidence that Jahi McMath is not brain dead."  (RJN, Exh. Q (Order Appointing Dr. Paul Fisher as Court Expert Witness); and RJN, Exh. R (Order Confirming Withdrawal of Petition for Writ of Error).)  Dr. Fisher's letter was attached to Judge Grillo's October 8, 2014 Order with a copy of the AAP Brain Death Guidelines, which Winkfield had previously stipulated to being the applicable medical criteria for determining whether McMath was brain dead.  (*Ibid.*)  After acknowledging receipt of the October 8, 2014 Order and Dr. Fisher's preliminary report, Winkfield immediately withdrew the Petition for Writ of Error.  (RJN, Exh. R (Order Confirming Withdrawal of Petition for Writ of Error).)

MOTION TO DISMISS                                                                    3:15-cv-06042-HSG

### 4.   The Damages Litigation And Related Petition For Writ Of Mandate

On or about February 2, 2015, plaintiffs filed a separate legal action seeking damages for McMath's personal injuries as though she is alive, and alternatively for wrongful death in the event McMath is found to be dead, captioned *Latasha Nailah Spears Winkfield, et al. v. Frederick S. Rosen, M.D., et al.*, Alameda Superior Court Case No. RG15760730 (the "Damages Litigation").   In the Damages Litigation, the plaintiffs have effectively asked the Alameda Superior Court to decide whether McMath is dead or alive under California law notwithstanding Judge Grillo's Final Order and Judgment that McMath suffered irreversible brain death and is dead as of December 12, 2013.

On March 14, 2016, the Alameda Superior Court overruled Dr. Rosen and Children's Hospital's demurrers to the First Amended Complaint in which they argued that McMath could not maintain a personal injury action as though she is alive based upon the preclusive effect of the Final Order and Judgment entered in the Probate Action had confirmed McMath is dead.  (RJN, Exhs. W and X (March 14, 2016 Orders).)  In doing so, the Court certified questions to the California Court of Appeal under Code of Civil Procedure section 166.1 on the issue of whether a judgment finding that an individual satisfied the criteria for brain death under California Health & Safety Code sections 7180 and 7181 is subject to preclusive effect in subsequent proceedings under the doctrines of *res judicata* and collateral estoppel.  (RJN, Exh. Y (Request Re: Other Ex Parte Granted).)

On April 13, 2016, Children's Hospital and Dr. Rosen filed a Petition for Writ of Mandate in the First Appellate District of the California Court of Appeal, separately styled *UCSF Benioff Children's Hospital Oakland, et al. v. The Superior Court of Alameda County*, Case No. A147989 (the "Hospital Writ Petition") to challenge the Alameda Superior Court's decision to permit plaintiffs to pursue simultaneous personal injury and wrongful death actions against them.  (RJN, Exh. BB (Writ Petition).)  On April 14, 2016, the Court of Appeal issued a notice under *Palma v. U.S. Industrial Fasteners, Inc.*, 36 Cal.3d 171, 177-80, 681 P.2d 893, 896-99 (1984) indicating that it may choose to issue a peremptory writ in the first instance.  (RJN, Exh. CC (*Palma* Notice).)  On May 12, 2016, a Letter of *Amici Curiae* In Support of the Petition for Writ of Mandate was filed by the California Medical Association, the California Dental Association, the California Hospital Association and the American Medical Association urging the Court of Appeal to grant the Petition for Writ of Mandate by Children's Hospital

and Dr. Rosen.  (RJN, Exh. EE (*Amici* Letter).)  In that letter, the *Amici* ask the Court to recognize that McMath has died in the eyes of both the law and under established principles of medicine.  (*Id.*, at p. 10.)  They point out that even though "modern medical technology" has provided for maintenance of "biological functions," the fact of death has not, and cannot, be changed or altered simply because her family chooses to believe she is alive.  (*Ibid.*)

On May 16, 2016, plaintiffs filed an opposition to the Petition for Writ of Mandate, arguing, among other things, that the Alameda Superior Court has permitted, and should continue to permit them to "allege and prove, with expert, scientific evidence, that today [McMath] does not meet California's definition of brain death, no matter what her condition was in December 2013." (RJN, Exh. DD (Opp. To Writ Petition), at p. 10.)  Though plaintiffs have continuously maintained that McMath is alive since filing the first Probate Action in December 2013, and despite multiple independent medical findings to the contrary, Plaintiffs contend, as they do in this action, that evidence of brain function "came to light" in the fall of 2014 – about the same time they filed and withdrew the Petition for Writ of Error Coram Nobis.  (*Ibid.*)

### 5.    The Second Federal Action

The instant litigation captioned *Jahi McMath, et al. v. State of California, et al.,* Northern District Case No. 3:15-cv-06042 (the "Second Federal Action") represents the sixth legal action initiated by Winkfield to request a judicial "declaration that Jahi McMath is not dead" under California law, and based upon such a finding, to "expunge" state records documenting her death with the goal of paving the way for her body's return to California.  (Docket No. 1 (Complaint) at p. 55, lines 23-26.)  Though the plaintiffs allege that a number of their Constitutional rights have been violated, the primary relief sought is a judicial declaration that McMath is not dead under California law.

## III.    RELEVANT LEGAL STANDARDS

### A.    Motion To Dismiss Under Rule 12(b)(6)

A party that wishes to move for dismissal of an action based upon the plaintiff's failure to state a claim must do so before filing a responsive pleading.  Fed. R. Civ. P. 12(b).  The court should grant a

MOTION TO DISMISS                                                                3:15-cv-06042-HSG

1    motion to dismiss brought under Rule 12(b)(6) if the complaint does not contain "enough facts to state a

2    claim for relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*

3    550 U.S. 544, 570 (2007).  When considering a motion to dismiss under this provision, the Court "must

4    accept as true all of the factual allegations contained in the complaint," but need not accept as true

5    allegations that are legal conclusions, unwarranted deductions of fact, or unreasonable inferences.

6    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

7    Cir.2001) *amended,* 275 F.3d 1187.  A dismissal is warranted if there are insufficient facts alleged to

8    state a valid claim, even if a cognizable legal theory is asserted.  *Balistreri v. Pacifica Police Dep't,* 901

9    F.2d 696, 699 (9th Cir.1990).

10        Here, Children's Hospital and Dr. Rosen move for a dismissal of this Second Federal Action on

11   three independent grounds.  First, a dismissal is warranted as a matter of court discretion to decline

12   consideration of requests for declaratory relief under the Declaratory Judgment Act to prevent forum

13   shopping and inconsistent results.  Second, a dismissal is warranted under the doctrines of *res judicata*

14   and collateral estoppel because the issue of whether McMath is dead under California law has been fully

15   litigated in a California State Court civil action that resulted in a final judgment.  Lastly, and as more

16   fully set forth in the Motions to Dismiss filed by the State and County defendants whose motions are

17   hereby joined, dismissal is warranted under the doctrine of abstention as set forth in the court's decision

18   of *Younger v. Harris,* 401 U.S. 37 (1971) and for lack of subject matter jurisdiction under the *Rooker-*

19   *Feldman* doctrine.

20

21        **B.        The Uniform Determination of Death Act**

22        An individual is considered dead under California law if he or she has sustained "either (1)

23   irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all

24   functions of the entire brain, including the brain stem…"  Cal. Health & Saf. Code § 7180(a).  Health

25   and Safety Code section 7180, which codifies the Uniform Determination of Death Act (the "UDDA"),

26   goes on to provide that "[a] determination of death must be made in accordance with accepted medical

27   standards."  *Id.*  Section 7181 of the Health and Safety Code imposes additional safeguards for

28   individuals before they may be pronounced dead by neurological criteria, mandating that "independent

     confirmation by another physician" is required "[w]hen an individual is pronounced dead by

                                                    11

1   determining that the individual has sustained an irreversible cessation of all functions of the entire brain,

2   including the brain stem."  Cal. Health & Saf. Code § 7181.

3        The Alameda Superior Court entered a Final Order and Judgment finding that McMath satisfied

4   the criteria for brain death, and is therefore deceased under California law.  This court must refrain from

5   allowing plaintiffs to re-litigate the issue of whether McMath is dead – a biological state which is both

6   medically and legally irreversible.  A dismissal of the entire action is warranted.

7

8   **IV.    THIS COURT SHOULD DECLINE TO EXERCISE AUTHORITY UNDER THE DECLARATORY JUDGMENT ACT**

9        When a federal court is presented with a challenge under the Declaratory Judgment Act, as is the

10  case here, the court has discretion "in the first instance" to dismiss the action when "the questions in

11  controversy ... can better be settled in" a pending state court proceeding.  *R.R. St. & Co. Inc. v.*

12  *Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011), *citing Brillhart v. Excess Ins. Co. of Am.*, 316

13  U.S. 491, 495 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-290 (1995).  Three factors

14  should be considered when determining whether a declaratory judgment action should be dismissed: (1)

15  avoiding "needless determination of state law issues"; (2) discouraging "forum shopping"; and (3)

16  avoiding "duplicative litigation."  *R.R. St. & Co. Inc.,* 656 F.3d at 975.  These three factors "remain the

17  philosophic touchstone" when considering whether to exercise discretion under *Wilton* and *Brillhart* to

18  decline a request for declaratory relief under the Declaratory Judgment Act.  *Id.*  Consideration of each

19  of these three factors in this case supports a decision to dismiss this action as a matter of discretion in the

20  first instance.

21       First, there is no need for this Court to adjudicate the issue of whether McMath is dead under

22  California law.  Making such a determination will necessarily require this court to decide basic issues of

23  state law concerning death, including interpretations of Health and Safety Code sections 7180 and 7181.

24  As recognized by the court in *R.R. St. & Co. Inc.,* "needless determination of state law issues alone may

25  support remand."  *Id.*, at p. 976, *referencing Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800,

26  802–04 (9th Cir.2002).  McMath has been declared dead under California's UDDA under accepted

27  medical standards.  Her death was subsequently confirmed through entry of a Final Order and Judgment

28  entered following a comprehensive evidentiary hearing set for the purpose of deciding whether McMath

12

is legally dead.  Plaintiffs have repeatedly taken the position that McMath never met the criteria for death established under the UDDA and that she is not dead because her heart continues to beat.  To answer the question of whether McMath might now be considered alive under California law will require a close examination and scrutiny of the law under which the State of California has used to declare McMath dead. There is no reason for the federal court to become entangled in a matter of state law concern.

Second, the plaintiffs have engaged in forum shopping since 2013 with the goal of finding a court to consider, and ultimately find, that McMath is not dead under California law.  As recognized by the court in *R.R. Street & Co. Inc.*, the archetypal forum shopping case is one that is "reactive" to another proceeding.  By way of example, the Court cited to *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371–72 (9th Cir. 1991), in which an insurer filed a declaratory judgment action before the federal court " 'during the pendency of a non-removable state court action presenting the same issues of state law,' " for the sole purpose of gaining " 'a tactical advantage from litigating in a federal forum.' " *R.R. St. & Co. Inc.,* 656 F.3d at 976, *citing Continental Cas. Co.*, 947 F.2d at 1371-72.  The *Continental Cas. Co.* court found that dismissal was warranted based upon the "defensive or reactive" nature of the insurer's action."

In the Probate Action, initiated by Winkfield, Winkfield submitted a declaration asserting her belief that McMath was not dead.  The court disagreed, and entered a Final Order and Judgment confirming that McMath met the statutory criteria for brain death and was legally dead under California law.  She then filed the 2013 Writ Petition and First Federal Action asking both of those courts to find McMath was not brain dead.  Both actions were dismissed as moot once McMath was removed from Children's Hospital.  She then filed a Petition for Error Coram Nobis, asking the Probate Court to reverse its finding that McMath is dead, but withdrew it when the court appointed expert issued a report finding that no new evidence supported a change from the original finding that McMath is dead.  In admitted reaction to the October 8, 2014 Order and report by Dr. Fisher, plaintiffs withdrew the Petition for Writ of Error Coram Nobis and filed the instant Second Federal Action seeking, yet again, a declaration that McMath is alive.  Plaintiffs' Second Federal Action is an archetypal reactive proceeding

13

1  which the Ninth Circuit has expressly discouraged as a type of forum shopping under *Continental Cas.*

2  *Co. Inc.* and *R.R. Street & Co. Inc.*

3       Lastly, there is a very high risk of duplicative litigation on the issue of whether McMath is dead.

4  When a request for declaratory relief will require "the district court to address the same issues of state

5  law" currently pending in a state court proceeding, there is a risk of duplicative litigation. *R.R. Street &*

6  *Co. Inc.*, 656 F.3d at 976-77.  In the currently pending Damages Action in Alameda Superior Court, the

7  Court of Appeal is presently considering the issue of whether McMath should be permitted to relitigate

8  the issue of whether she is dead under California law.  This is the same issue that is being set for

9  resolution in the instant federal litigation.  Without question, if this Court permits relitigation of whether

10  McMath is dead under California law, its actions will interfere with the California State Courts' actions

11  and anticipated decisions on the very same issue, which is a matter of inherent state concern.

12       Each of the three factors under *Wilton* and *Brillhart* are satisfied and this Court should decline to

13  issue a declaration that McMath is not brain dead as a matter of discretion and in light of the pending

14  state court proceedings set to address the same issue.

15  **V.  THIS CASE SHOULD BE DISMISSED TO PRECLUDE PLAINTIFFS FROM**
16  **MAKING A COLLATERAL ATTACK ON A FINAL JUDGMENT FINDING**
     **MCMATH IS DEAD**
17
       The issue of whether McMath is dead has been fully and finally litigated to final judgment.  A
18
   complaint should be dismissed when the plaintiff's claims have been previously litigated to final
19
   judgment in a state court proceeding.  *See, Evans v. Pearson Enter., Inc.* 434 F.3d 839, 849–50 (6th
20
   Cir.2006); *and Hawkins v. Starosciak*, C 10-0248 JW PR, 2011 WL 3739038, at p. 2 (N.D. Cal. Aug.
21
   24, 2011).  Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give
22
   to a state-court judgment the same preclusive effect as would be given that judgment under the law of
23
   the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465
24
   U.S. 75, 80–81 (1984); *Abbott v. Michigan,* 474 F.3d 324, 330 (6th Cir.2007).  In other words, a federal
25
   court must give preclusive effect to a judgment issued by a California state court if California state
26
   courts would give the judgment preclusive effect.  *Allen v. McCurry*, 449 U.S. 90, 96 (1980).  For that
27
   reason, this federal court must look to the law of California to determine whether and to what extent the
28

---

14

1   prior judgment entered in the Probate Action should receive preclusive effect in this Second Federal

2   Action.  *Migra, supra*, 465 U.S. at 81.

3       When the Court issued its Order and Final Judgment in the Probate Action, it agreed with the

4   independent medical experts that McMath had suffered "irreversible" brain death and necessarily found

5   there was no medical possibility that McMath's condition would change.  Here, McMath, a deceased

6   individual under the law of California, is asking this court to find that she "did not, and does not, meet

7   California's definition of brain death," among other things despite the Final Order and Judgment.

8   (Docket No. 1 (Complaint), at ¶ 292.)  The issue of whether McMath is dead has been fully, and finally,

9   litigated by a court of competent jurisdiction whose Final Order and Judgment should not be disrupted

10  through a *de facto* appeal in this Court.  The Final Order and Judgment is subject to preclusive effect in

11  this case.

12      **A.    Collateral Estoppel Prevents Re-Litigation Of Issues Related To Brain Death**

13      "Collateral estoppel is one aspect of the broader doctrine of *res judicata*."  *Gottlieb v. Kest*, 141

14  Cal.App.4th 110, 147-48, 46 Cal.Rptr.3d 7, 33 (2006), *citing Syufy Enterprises v. City of Oakland*, 104

15  Cal.App.4th 869, 878, 128 Cal.Rptr.2d 808 (2002).  The purpose of the doctrine is "to promote judicial

16  economy by minimizing repetitive litigation" in addition to relieving "parties of the cost and vexation of

17  multiple law suits," and "encourage[ing] reliance on adjudication by preventing inconsistent decisions."

18  *Gottlieb*, 141 Cal.App.4th at 147-48, 46 Cal.Rptr.3d at 33; *Marin v. HEW, Health Care Fin. Agency* 769

19  F.2d 590, 594 (9th Cir.1985), *quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980).  However, "where *res

20  judicata* operates to prevent relitigation of a cause of action once adjudicated, collateral estoppel

21  operates ... to obviate the need to relitigate issues already adjudicated in the first action."  *Syufy

22  Enterprises*, 104 Cal.App.4th at 878.

23      Under California law, collateral estoppel, commonly known as issue preclusion, prohibits the re-

24  litigation of issues if: (1) the issue is identical to the one decided in a prior proceeding; (2) the issue was

25  actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding;

26  (4) the decision in the prior proceeding was final and on the merits; and (5) the party against whom

27  preclusion is sought is the same or is in privity with a party from the prior proceeding.  *Lucido v.

28

MOTION TO DISMISS                                                   3:15-cv-06042-HSG

*Superior Court,* 51 Cal.3d 335, 341, 795 P.2d 1223, 1225 (1990).   Each of the conditions for applying

collateral estoppel have been met.

       **1.**       **Issue Of Brain Death In This Case Is Identical To The Issue Litigated In Prior Probate Action**

       In the Probate Action, the Court considered the issue of whether McMath met the statutory

criteria for brain death as established under sections 7180 and 7181 of the Health and Safety Code.

(RJN, Ex. D (Amended Order 1/2/14).)  In her original Petition, Winkfield asked the Alameda Superior

Court to issue an order requiring Children's Hospital to prescribe health care to McMath under Probate

Code sections 3201, 4766 and 4770.  (RJN, Ex. A (Petition for Medical Treatment), at p. 4, lines 1-2.)

These Probate Code sections set forth the mechanism and procedure for obtaining a court order

permitting one person to make health care decisions on behalf of another in the event that the patient

loses capacity to make his or her own health care decisions.  (*See* Cal. Prob. Code §§ 3201, 4766 and

4770.)

       In her Petition, Winkfield argued that her daughter lacked capacity to make health care decisions

and that the court must issue an order forcing Children's Hospital to provide the medical care and

treatment requested by Winkfield in the form of life support (nutrition via a gastric feeding tube,

intravenous fluids, and ventilator support through tracheostomy).  In response, Children's Hospital

argued that because McMath had suffered irreversible brain death, and was therefore dead under

California law by accepted medical and legal standards, it was not obligated to provide medical

treatment to McMath.  (RJN, Ex. B (Memorandum of Ps & As In Opp. To Ex Parte App. For TRO), at

pages 1-2.)  Indeed, Judge Grillo agreed that Probate Code sections 3200 and 4600, *et seq.*, could not be

invoked to compel medical treatment of a deceased person and recognized that the relief actually sought

by Winkfield was an order compelling medical treatment based on her position "that her daughter was

not legally dead."  (RJN, Ex. D (Amended Order), at p. 3, fn 2.)  Thus, to determine whether the Petition

should be granted, Judge Grillo was required to adjudicate the question of whether McMath was dead.

       In this Second Federal Action, plaintiffs have alleged that McMath does not meet the criteria for

brain death established under California law.  They argue that because McMath is alive, this Court

should issue a variety of declarations, including specific declarations that McMath "does not have

16

irreversible cessation [of] all functions of the entire brain, including the brain stem" and that "McMath McMath is not dead." (Docket No. 1 (Complaint) at ¶¶ 295, 303.)  The issue of brain death adjudicated in the Probate Action is identical to that before the court in this Second Federal Action.

### 2.      Issue Of Brain Death Was Actually Litigated In Prior Action

The issue of whether McMath satisfied the statutory criteria for brain death established under the UDDA was fully litigated in the Probate Action.  In his Amended Order issued on January 2, 2014, Judge Grillo sets forth a comprehensive report of the proceedings to determine whether McMath was dead under Health & Safety Code sections 7180 and 7181. .  (RJN, Ex. D (Jan. 2, 2014 Amended Order).)  At the hearing on December 24, 2013, the court heard testimony from Dr. Fisher and Dr. Shanahan.  The court accepted and considered evidence at the December 24, 2013 hearing, including examination notes, documents setting forth the standards for determining brain death in infants and children, and a declaration by Dr. Shanahan.  Counsel for Winkfield was afforded the opportunity to, and did in fact, conduct a cross-examination of both Dr. Fisher and Dr. Shanahan.  (*Id.* at pp. 6-7.)

The court concluded that examinations had been conducted by at least three physicians in accord with accepted medical standards as required in sections 7180 and 7181 of the Health and Safety Code.  Counsel for plaintiffs agreed that accepted medical standards had been applied, and that the court appointed expert was qualified to opine on the issue of whether McMath was dead.  The court also examined issues pertaining to its jurisdiction, the relevant legal standard of review and related due process concerns.  Satisfied that it had jurisdiction to rule, the court applied the clear and convincing evidence standard to conclude that McMath had suffered irreversible brain death and was therefore dead under California law.  Accordingly, Children's Hospital had no further obligation to provide medical care or treatment to McMath and Winkfield's Petition was denied.

### 3.      Issue Of Brain Death Was Necessarily Litigated In Prior Action

As recognized by Judge Grillo, hospitals in California are not obligated to provide medical treatment to a deceased person as such treatment would be "futile."  (RJN, Ex. D (Jan. 2, 2014 Amended Order), at p. 5.)  Thus, the only way to reach the issue of whether Children's Hospital should be compelled to provide medical treatment to McMath was to evaluate whether Children's Hospital's

17

defense to providing such treatment - that McMath was legally dead – was valid.  Put differently, Winkfield's only option for succeeding on her Petition to Provide Medical Treatment was to establish that McMath was alive.  Thus, not only was the issue fully litigated, full litigation of the issue was necessary to adjudicate Winkfield's Petition.

### 4.    Issue Of Brain Death Was Decided On The Merits In Prior Action

The Court held a full evidentiary hearing over the course of three days in December 2013 before deciding McMath was not alive under California law.  (RJN, Ex. D (Jan. 2, 2014 Amended Order), at p. 5, lines 10-21.)  During the course of those proceedings, and as more fully set forth above, the Court considered medical evidence, legal standards, oral argument and expert testimony.  The Court also permitted cross-examination of the child neurology expert whose appointment to satisfy the section 7181 independent examination requirement was agreed to by Winkfield's attorney.  After hearing conclusive testimony from both Dr. Shanahan and Dr. Fisher, the court issued a ruling in open court confirming that McMath had suffered irreversible brain death and was therefore dead under sections 7180 and 7181 of the Health and Safety Code.  Following the hearing, the Court issued an Order and Final Judgment finding that McMath satisfied the criteria for brain death under sections 7180 and 7181 and was therefore deceased under California law.  (RJN, Exh. D (Jan. 2, 2014 Amended Order); RJN, Exh. E (Jan. 17, 2014 Judgment).)

### 5.    Winkfield Was A Party To Prior Action

Both Children's Hospital and Winkfield were parties to the Probate Action in which the court concluded McMath was dead under California law.  Under California law, a final probate judgment that has not been appealed, like the Probate Action judgment, is accorded greater preclusive effect than ordinary civil judgments and is said to be conclusive "against the whole world and not just the parties to the litigation." *In re Est. of Redfield*, 193 Cal.App.4th 1526, 1534, 124 Cal.Rptr.3d 402, 407 (2011), *citing Heiser v. Super. Ct.,* 88 Cal.App.3d 276, 278, 151 Cal.Rptr. 745 (1979).  Thus, *res judicata* is regularly applied to judgments entered in probate court actions to preclude relitigation of identical issues in subsequent general civil actions so long as the criteria (described above) have been met.  *See, e.g., Fairchild v. Bank of Am. Nat. Trust and Sav. Ass'n*, 165 Cal.App.2d 477, 484, 332 P.2d 101, 106 (1958),

18

and *In re Est. of Redfield*, *supra*, 193 Cal.App.4th at 1534, 124 Cal.Rptr.3d at 407; *see also United States v. Geophysical Corp. of* Alaska, 732 F.2d 693, 697 (9th Cir.1984) [whether to apply the doctrine of collateral estoppel "is left to the district court's discretion"].   Dr. Rosen's interests are fully aligned with those of Children's Hospital on the issue of whether McMath meets the statutory criteria for brain death.   On the other hand, Winkfield was a party to the prior proceeding, and it is against her here that Children's Hospital and Dr. Rosen seek to have the Probate Court's ruling applied.   There is no reason to not apply collateral estoppel to prevent plaintiffs from relitigating the issue of whether McMath is dead in this Second Federal Action.

### B.   The Final Order And Judgment Entered In Probate Action Must Be Afforded Preclusive Effect

California courts apply the doctrines of *res judicata* and collateral estoppel to prevent relitigation of issues that were finally decided in probate proceedings.   The doctrines of *res judicata* and collateral estoppel operate to preclude relitigation of an issue that has been finally determined by "a court of competent jurisdiction." *Whittlesey v. Aiello*, 104 Cal.App.4th 1221, 1226, 128 Cal.Rptr.2d 742, 745 (2002).   A court of competent jurisdiction is one that has jurisdiction of the subject matter. *People v. Jackson*, 150 Cal.App.3d Supp. 1, 6, 198 Cal.Rptr. 135, 136 (1983); 2 Witkin, Cal. Procedure (4th ed. 1996–1997) Jurisdiction, § 45, p. 586.   A probate court is nothing more than a "superior court sitting in probate" with general jurisdiction to adjudicate issues based upon authority derived from the Probate Code. *In re Bissinger's Estate*, 60 Cal.2d 756, 764-765, 388 P.2d 682, 687 (1964) (internal citations omitted).   It is said there is a "fundamental distinction between the law and equity jurisdiction of the superior court and its probate jurisdiction," with the probate court technically left without general equity jurisdiction. *Id*   Nevertheless, the probate court has "the power to apply equitable and legal principles in aid of its functions as a probate court." *Id*.

The court in which the Probate Action was adjudicated had jurisdiction to consider whether McMath met the criteria for death established under the Health and Safety Code as incidental, and necessary, to exercising its power to adjudicate Winkfield's Petition to Compel Medical Treatment brought under the Probate Code.   In short, Judge Grillo presided over a court of "competent jurisdiction" to fully adjudicate the issue of whether or not McMath was dead.   Because the criteria for applying

19

collateral estoppel have been established, the Final Order and Judgment entered in the Probate Action

must be given preclusive effect in this case to bar plaintiffs from relitigating the issue of whether

McMath is dead under California law.

### C.   There Is No Legal, Medical Or Equitable Basis To Permit Relitigation Of Death

Plaintiffs argue there are "changed circumstances" obligating this Court to consider whether

McMath is still dead under California law as a matter of equity and have suggested that such a

determination can be made without disrupting the Final Order and Judgment entered Probate Action.

While it is true that California courts are not obligated to apply collateral estoppel to "bar a later claim if

new facts or changed circumstances have occurred since the prior decision," there is no basis for

applying the principle of changed circumstances to this case. *Melendres v. City of Los Angeles*, 40

Cal.App.3d 718, 730, 115 Cal.Rptr. 409, 417 (1974).  The court in *Union P. R.R. Co. v. Santa Fe P.

Pipelines, Inc.*, 231 Cal.App.4th 134, 180 Cal.Rptr.3d 173 (2014) recognized, both logically and

accurately, that "[s]ome issues are not static, that is, they are not fixed and permanent in their nature."

*Union P. R.R. Co.*, 231 Cal.App.4th at 181, 180 Cal.Rptr.3d at 211, *citing Lunt v. Boris,* 87 Cal.App.2d

694, 695, 197 P.2d 568 (1948).  It went on to explain that "[w]hen a fact, condition, status, right, or title

is not fixed and permanent in nature, then an adjudication is conclusive as to the issue at the time of its

rendition, but is not conclusive as to that issue at some later time." *Id*.  Death, by logic, law and

necessity, is permanent.  A judgment finding death has occurred under California law – particularly

where the judgment was never challenged through the ordinary appellate procedure – must be accorded

finality.  In addition, this position is in direct contradiction to the operative complaint in this case in

which plaintiffs allege that McMath "did not, and does not, meet California's definition of 'brain

death.'" (Docket No. 1 (Complaint), at ¶ 291.)  If plaintiffs are allowed to amend this factual allegation,

and contend instead that McMath was once dead but is now alive, the result would be an impermissible

sham pleading. *See, e.g.*, *PAE Govt. Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).

Furthermore, if this Court allows plaintiffs to adjudicate the issue of whether McMath is now

alive without disturbing the Final Order and Judgment confirming that McMath has been dead since at

least December 12, 2013 under accepted medical standards, the result would not be supported by logic,

law or medicine.  There is no medical or legal authority supporting plaintiff's position that a person who

20

1  is biologically dead can reverse course and return to life; either that person was dead then and continues

2  to be dead now, or that person was never dead to begin with.  Either way, to decide that McMath is now

3  alive would be to disrupt and overrule the Final Order and Judgment confirming that McMath is dead

4  under California law.

5      In the Probate Action, the parties fully and finally litigated whether McMath is dead.  Death is a

6  fixed point, permanent and unchanging; it is a point from which a person cannot return.  As a result of

7  modern medicine, however, a person's body can be "artificially supported for respiration and circulation

8  after all brain functions cease irreversibly."  (RJN, Ex. AA (Preface to UDDA), at p. 1.)  In other words,

9  a person being maintained on a ventilator may appear to be alive under the common law (i.e., lungs

10  breathing, heart beating), but that person is nevertheless dead because the brain, including the brain

11  stem, has stopped working with no possibility of recovery.  Given the "potential disparity between

12  current and accepted biomedical practice," the UDDA was drafted to definitively clarify when death has

13  occurred.  (*Id.*, at pp. 1-2.)  In short, the UDDA recognizes that a person may be legally dead, having

14  suffered irreversible loss of brain function, even though respiratory and circulatory functions are being

15  maintained artificially.  Once a person is declared dead, there is no medical possibility the person's

16  condition can, or will be, reversed.

17      Fundamentally, the determination of death has always rested upon the presumption that a

18  person's brain has ceased to function.  Until recently, cessation of cardiorespiratory function was the

19  accepted manner to conclude a person had died (along with their brain).  That medical technology has

20  enabled physicians to mask the appearance of death by artificially maintaining those functions by which

21  we have historically calculated the event of a person's death should not, and indeed must not, inhibit

22  medical practitioners from conclusively determining whether a person has died.

23      The UDDA drafters intentionally left the Act "silent on acceptable diagnostic test and medical

24  procedures" that should be used for determining death.  (RJN, Ex. AA (Preface to UDDA), at pp. 1-2.)

25  In doing so, they explicitly recognized the importance of leaving the medical profession "free to

26  formulate acceptable medical practices" for determining when death has occurred as medical

27  knowledge, technology and testing evolves.  *Id.*  To that end, the medical profession has created the

28  recognized standards for diagnosing brain death in children, AAP Brain Death Guidelines, and the

MOTION TO DISMISS                                                    3:15-cv-06042-HSG

1    plaintiffs agreed those accepted medical standards were followed by Dr. Fisher when he confirmed

2    McMath was brain dead.

3          In addition, allowing this challenge to a death determination under accepted medical standards

4    has the unavoidable consequence of creating an ethical conundrum for hospitals and other care providers

5    who are asked to provide medical care and services to individuals who are deceased.  As recognized by

6    Judge Grillo in the Probate Action, on a fundamental level, a hospital is not obligated to provide medical

7    services to a deceased person.  However, if a person is allowed to challenge, or in effect, reject the

8    pronouncement of death made under the UDDA, a hospital may be effectively forced to provide medical

9    care as an act of futility and at the expense of providing care and treatment to the living.  It should be

10   noted that in New Jersey, where McMath's body is being maintained on ventilator support at the

11   expense of New Jersey's Medicaid program, there is a statutory provision which allows McMath's

12   family to reject a death determination on neurological criteria.  *See, e.g.* N.J. Stat. Ann. § 26:6A-5 (death

13   may only be declared "upon the basis of cardio-respiratory criteria" if the physician who would

14   otherwise declare death "has reason to believe…the individual's personal religious beliefs that such a

15   declaration would violate the personal religious beliefs of the individual").  Though no equivalent statute

16   exists in California, plaintiffs are effectively asking this court to grant McMath the beneficial effect of

17   such a law by allowing her to plainly reject a final death determination made under sections 7180 and

18   7181 of the Health and Safety Code.  McMath's remedy for changing the law lies with the California

19   Legislature, not the federal judiciary.

20         All interested parties, including both Children's Hospital and Dr. Rosen, as well as the other

21   defendants to this and the Damages Litigation, have a right to rely upon the final judgment issued in the

22   Probate Action.  A final determination of death under the circumstances of this case must not be upset.

23   Because McMath's family has been allowed to maintain McMath on a ventilator indefinitely, it is

24   inevitable that the state of her body will change with time.  These parties must not be forced to re-open

25   litigation every time that McMath's body exhibits some change when the core finding remains static and

26   irreversible: she is dead under California law.

27

28

MOTION TO DISMISS                                                          3:15-cv-06042-HSG

1   **VI.     JOINDER TO COUNTY DEFENDANTS' MOTION TO DISMISS**

2           As set forth in detail in the County Defendants' Motion to Dismiss, this Court should abstain

3   from interfering in State issues concerning McMath McMath.  *Younger v. Harris*, 401 U.S. 37 (1971).

4   Whether McMath meets the statutory criteria for brain death is an issue that has been adjudicated to final

5   judgment before the Alameda Superior Court, as set forth above.  Even if the Court were to focus in on

6   McMath's current physiological status, it could not issue an order finding that she is no longer brain

7   dead without disrupting the prior Final Order and Judgment confirming that McMath is deceased under

8   California law.  Further, plaintiffs have continued to challenge the determination of death in connection

9   with their medical malpractice suit against Dr. Rosen and Children's Hospital, among others.  Indeed,

10  plaintiffs have indicated in court filings in Alameda Superior Court in the Damages Action that they

11  intend to engage in discovery almost identical to that which they have attempted to initiate in this case.

12  (*See, e.g.,* Docket No. 28 (Joint Letter Brief Re: Deposition of Dr. Machado, a Cuban National) and

13  Docket No. 29 (Order Denying Early Discovery and Deposition of Dr. Machado).)  Specifically,

14  plaintiffs have stated in Alameda Superior Court:

15              Plaintiffs anticipate that issues related to *whether or not McMath is brain
                dead* or alive, *the status of her death certificate* and, if found to be alive,
16              her injuries and damages will consume months of discovery, including
                depositions of the New Jersey physicians who have treated McMath, and
17              experts including one in Cuba and several in Los Angeles, CA, followed
                by weeks of trial.  Plaintiffs and Defendants [Dr. Rosen and Children's
18              Hospital] will rely on testimony from a host of treating physicians and
                medical and ethical experts to establish "life" or "brain death," and
19              ultimately to establish the nature, extent, severity and prognosis for her
                injuries attributable to medical malpractice…
20
21  (RJN, Ex. Z (Motion to Bifurcate), at p. 2, lines 13-21 (emphasis added).)

22

23          The issue of whether McMath is dead, and thus whether the Final Order and Judgment was

24  properly entered in the Probate Action, is best resolved in the State Courts.  Similarly, issues related to

25  the death certificate, which simply memorializes the fact of McMath's death, are also best and most

26  appropriately resolved before the State Court, which already has an intimate knowledge of the facts and

27  issues based upon several years of prior litigation in its courts.  Accordingly, Children's Hospital and

28  Dr. Rosen join in the County Defendants' request for a dismissal under the doctrines of abstention.

Case 3:15-cv-06042-HSG   Document 69   Filed 05/20/16   Page 32 of 33

## VII.   JOINDER TO STATE OF CALIFORNIA'S MOTION TO DISMISS

As set forth in detail in the State of California Defendants' Motion to Dismiss, this Court should abstain from interfering in State issues concerning McMath McMath.  Whether McMath meets the statutory criteria for brain death is an issue that has been adjudicated to final judgment before the Alameda Superior Court, as set forth above.  Accordingly, this court lacks subject matter jurisdiction to consider this dispute, along with plaintiffs' intricately intertwined constitutional claims, under the *Rooker-Feldman* doctrine.  *See, e.g.*, *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003) (de facto appeals forbidden under *Rooker-Feldman* doctrine when plaintiff seeks relief from state court judgment in federal court).  In the alternative to a dismissal, this Court should stay this Second Federal Action under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because the case involves issues of state law, the earlier filed state court proceeding is more advanced, and the federal proceeding includes requests for declaratory relief.  *Colorado River*, 424 U.S. at p. 817. Accordingly, Children's Hospital and Dr. Rosen join in the State of California Defendants' request for a dismissal, or in the alternative, for a stay.

## VIII.   CONCLUSION

For the reasons set forth in detail above, this court should dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).


DATED: March 29, 2016                    Respectfully submitted,

                                         COLE PEDROZA LLP


                                         /s/ Dana L. Stenvick
                                         Dana L. Stenvick
                                         Attorney for Defendants UCSF BENIOFF
                                         CHILDREN'S HOSPITAL OAKLAND and
                                         FREDERICK S. ROSEN, M.D.

MOTION TO DISMISS                                         3:15-cv-06042-HSG

1

**CERTIFICATE OF SERVICE**

2

**Case Name:  McMath McMath (Minor) v. State of CA**          No.  **15-cv-06042**

3

4     I hereby certify that on May 20, 2016, I electronically filed the following documents with the
      Clerk of the Court by using the CM/ECF system:
5

6               **NOTICE OF MOTION BY CHILDREN'S HOSPITAL AND DR. ROSEN
                TO DISMISS PLAINTIFFS' COMPLAINT AND JOINDER IN MOTIONS BY**
7              **ALAMEDA COUNTY AND STATE OF CALIFORNIA TO DISMISS OR STAY**

8
      I certify that **all** participants in the case are registered CM/ECF users and that service will be
9     accomplished by the CM/ECF system.

10
      I declare under penalty of perjury under the laws of the State of California the foregoing is true
11    and correct and that this declaration was executed on May 20, 2016, at San Marino, California.

12

13              Cynthia Michelena                    /s/ *Cynthia Michelena*

14    _____         _____
                Declarant                               Signature

15

16

17

18

19

20

21

22

23

24

25

26

27

28