1
2
3
4
5
6
7

Christopher B. Dolan (SBN 165358)
Aimee E. Kirby (SBN 216909)
**THE DOLAN LAW FIRM**
1438 Market Street
San Francisco, California 94102
Tel: (415) 421-2800
Fax: (415) 421-2830

Attorneys for PLAINTIFF
JAHI MCMATH, a minor,
and NAILAH WINKFIELD

8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JAHI MCMATH, a minor; NAILAH
WINKFIELD, an individual, as parent, as
guardian, and as next friend of JAHI McMath,
a minor

      Plaintiffs,

v.

STATE OF CALIFORNIA;
COUNTY OF ALAMEDA, et al

      Defendants.

Case No. 3:15-cv-06042 HSG

**PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FILED BY
CHILDREN'S HOSPITAL AND DR.
FREDERICK ROSEN**

Date: August 4, 2016

Time: 2:00 p.m.

Action Filed:    December 23, 2015

Trial Date:    None Set

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO
DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......……………………………………………………………..iii

I.   OVERVIEW OF CASE AND OF RELIEF REQUESTED.............................................................. 1

   A.   THE HEARINGS WHICH ALLOWED JAHI'S FAMILY TO REMOVE HER FROM CHILDREN'S HOSPITAL OF OAKLAND .................................................................................................................................. 4

   B.   WHEN JAHI SHOWED SIGNS OF NEUROLOGICAL IMPROVEMENT, HER MOTHER SOUGHT JUDICIAL REVIEW OF NEW EVIDENCE REGARDING HER PRESENT CONDITION. .................................................. 7

   C.   HAVING OBSERVED CONTINUED IMPROVEMENT IN JAHI'S CONDITION, HER MOTHER SEEKS ADMINISTRATIVE REVIEW OF JAHI'S FACIALLY AND FACTUALLY DEFECTIVE DEATH CERTIFICATE, IN ORDER TO ALLOW THEM TO MOVE BACK TO CALIFORNIA. ............................................................................ 9

   D.   THE MEDICAL MALPRACTICE ACTION .......................................................................... 10

   E.   SUMMARY OF PRIOR AND ONGOING ACTIONS ........................................................... 10

II.   MOTION TO STRIKE ......................................................................................................... 11

III.   LEGAL STANDARD ......................................................................................................... 13

IV.   ARGUMENT ...................................................................................................................... 13

   A.   THIS COURT SHOULD EXERCISE ITS AUTHORITY UNDER THE DECLARATORY JUDGMENT ACT TO ADJUDICATE PLAINTIFFS' PETITIONS FOR DECLARATORY RELIEF ................................................ 13

      1.   *The Court Will Not Needlessly Determine State Law Issues if it Maintains Jurisdiction Over the Plaintiff's Declaratory Action* ......................................................................................... 15

      2.   *The Plaintiff Has Not Engaged in Forum Shopping* .............................................................. 15

      3.   *Duplicative Litigation Is Not Likely if the Court Maintains the Plaintiff's Declaratory Judgment Action* 16

      4.   *The Other Factors Considered by The Ninth Circuit Support This Court's Retaining Jurisdiction Over This Declaratory Action* ................................................................................................. 16

   B.   THE *PULLMAN* ABSTENTION DOCTRINE DOES NOT JUSTIFY DISMISSAL OF THIS CASE OR A STAY IN THE PROCEEDINGS. ................................................................................................................. 16

   C.   THE PROBATE COURT'S RULING IN JANUARY, 2014, DOES NOT HAVE PRECLUSIVE EFFECT REGARDING PLAINTIFF'S CURRENT STATE OF BRAIN FUNCTION ......................................................................... 21

      1.   *The Issues of Estoppel and of the Finality of a Determination of Death Have Already Been Ruled on in the Alameda County Superior Court* ................................................................................. 21

      2.   *There Are Medical, Equitable, and Legal Bases Upon Which Plaintiffs' Claims Should Be Litigated.* 23

V.   CONCLUSION.................................................................................................................... 25

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

### STATUTES

*American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir.1994) ----------------------------------- 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)----------------------------------------------------------------- 13

Aubry v. Tri-City Hospital Dist. (1992) 2 Ca1.4th 962 -------------------------------------------------- 22

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)------------------------------------------------------------ 12

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ---------------------------------------------------------- 12

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ------------------------------------------- 13

*City of Houston v. Hill*, 482 U.S. 451 (1987) --------------------------------------------------------------- 18

City of Oakland v. Oakland Police and Fire Retirement System (2014) 224 Cal.App.4th 210-------------------- 22, 24

*Foman v. Davis*, 371 U.S. 178 (1962)------------------------------------------------------------------------ 13

*Friedl v. New York*, 210 F.3d 79 (2d Cir. 2000) ----------------------------------------------------------- 12

Galbraith v. Santa Clara, 307 F.3d 119 (9th Cir. 2002) ------------------------------------------------- 12

*Gibb v. Scott*, 958 F.2d 814 (8th Cir. 1992) ---------------------------------------------------------------- 12

*Gilbertson v. Albright,* 381 F.3d 965 n. 6 (9th Cir.2004) ----------------------------------------------- 19

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998)---------------------------------15, 16, 17

*Harman v. Forsennius*, 380 U.S. 528 (1965)---------------------------------------------------------------- 18

*Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042 (D. Ariz. 2014) ------------------------- 19

*MacArthur v. San Juan*, 309 F.3d 1216 (10th Cir. 2002) ------------------------------------------------ 12

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) --------------------------------------------------- 18

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ---------------------------- 13

*Plum Creek Timber Co. v. Trout Unlimited*, 255 F. Supp. 2d 1159 (D. Idaho 2003) ----------------------- 17

*Potrero Hills Landfill, Inc. v. Cnty. of Solano,* 657 F.3d 876 (9th Cir.2011)----------------------------- 19

*Schmitz v. Mars. Inc.*, 261 F.Supp.2d 1226 (D. Or. 2003) --------------------------------------------- 12

*Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999) --------------------------- 12, 13

Smith v. Exxon Mobil Oil Corp. (2007) 153 Cal.App.4th 1407 -------------------------------------------- 25

*Spoklie v. Mont.,* 411 F.3d 1051 (9th Cir.2005) ----------------------------------------------------------- 19

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488 (4th Cir.1998) --------------------------------------- 13

*United States v. Redwood*, 640 F.2d 963 (9th Cir. 1981) ------------------------------------------------- 12

*Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) ---------------------------------------------------------- 14

*Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967)------------------------------ 18

### STATUTES

California Health and Safety Code Section 7180----------------------------------------------------- *Passim*

California Health and Safety Code Section 7181------------------------------------------------------------ 5

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

Fed. R. Civ. P. 12 ------------------------------------------------------------------------------------------ 11, 12

Fed. R. Civ. P. 60(b)------------------------------------------------------------------------------------------ 24

Fed.R.Civ.P. 15 -------------------------------------------------------------------------------------------------- 13

OTHER AUTHORITIES

Federal Practice & Procedure § 4243 (3d ed.) (2007) ----------------------------------------------------- 20

Wright & Miller Federal Practice & Procedure, § 1366 (3d Ed.) ------------------------------------- 12

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

## I. OVERVIEW OF CASE AND OF RELIEF REQUESTED

In this action, Plaintiffs request that this Court, for the first time in any forum, examine overwhelming medical evidence that Jahi McMath *currently* exhibits function of numerous portions of her brain. Plaintiffs request injunctive and declaratory relief which will not necessarily affect the rights of the Intervening. This case was filed on December 23, 2015. Five months later, after this Court had been extensively briefed and had already entertained oral argument in the matter. Intervening Defendants Frederick S. Rosen, M.D., and UCSF Benioff Children's Hospital of Oakland ("CHO") filed the instant Motion to Dismiss ("MOTION"). The reason for Intervening Defendants' delay in moving to intervene and in filing this motion is unclear, since neither Intervenor has asserted any basis for their motion which was not available to them five months ago. This Court repeatedly has been informed of the closed cases which preceded the instant litigation, as well as the medical malpractice case, in what they unabashedly call the ***Damages Litigation***. In the damages litigation Defendants have denied that they owed any duty of care to Jahi, denied that they were negligent in the care they rendered Jahi, and deny that there is any causation which caused Jahi any harm yet they state that, in that case, the issue of Jahi's present status will be determined.  It is most probable, as in most medical negligence actions, Intervenor will move for summary judgment For a medical negligence jury to even consider Jahi's current brain function, the plaintiff's attorney in that case (not the attorney in this action)[1] must demonstrate each of the liability elements, duty, breach and causation before the issue of damages might lead to the question of Jahi's current status of alive or dead would be considered. Therefore, if the Intervenors can establish that plaintiff s cannot meet there burden of proof or production as to any element of their cause of action  (duty, no breach, or causation), the Alameda Superior Court  ***will never address the issue of Jahi's brain function***, the sole focus of the proceedings before this Court.

---

[1] Plaintiff's attorney in this action (Dolan), at the inception of the probate proceedings, specifically stated that he would not involve himself in any malpractice action that might be brought because he did not want anyone to claim that his motivation in fighting for Jahi was motivated by a desire to increase damages so as to benefit financially. Indeed Dolan has provided, and continues to provide, all legal assistance *pro bono*.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

In this action, Jahi McMath seeks declaratory (a judicial declaration that she is alive) and injunctive (injunctions requiring the named defendants to correct her facially invalid and factually inaccurate death certificate) relief.  For the purposes of ruling on this MOTION, this Court must accept all of Plaintiffs' factual allegations as true. The COMPLAINT repeatedly alleges that Jahi currently exhibits signs of brain function. (COMPLAINT, ¶¶ 100, 101, 102, 109, 111-116, 124-152). Plaintiff does not, and will not, ask the Court to determine whether Judge Grillo's December, 2013, decision was correct or not. A critical fact that the Court is by now assuredly aware of is that the December 2013 proceedings were on a "rocket docket" and all took place while Jahi was in an acute state of trauma, post the hypoxic event, without nutrition or care designed to improve her health status.[2]  The Court also should be aware that no child who has ever been diagnosed as Brain Dead has survived like Jahi.  The parents are, as CHO tried with WINKFIELD, pressured to donate their children's organs, or to end treatment before there is an opportunity for the swollen brain to recover some function.

In deciding whether or not to dismiss this action, the Court therefore must assume that Jahi's claims and accompanying evidence (in the form of the evidence to the COMPLAINT), are true and demonstrate that Jahi *currently* exhibits that Jahi has brain function.  Such claims and evidence are inconsistent with Jahi *currently* being dead per California Health and Safety Code Section 7180 (hereinafter "§7180"). As such, in ruling on this MOTION, this Court must assume that, in fact, Jahi is alive.

In requesting dismissal at this stage, Intervenors therefore request this Court to reach the merits of the case without providing her due process (one of the very claims in this action) and summarily dismiss her plea that this Court, applying federal law, declare her alive and enjoin (mandate) the named defendants, in this action (who were not defendants in any prior action) so as to correct her invalid and inaccurate death certificate.  Incongruously the Intervening Defendants argue that equity requires this Court to dismiss Jahi's requests and to abstain from examining new evidence regarding Jahi's current state of brain function and to allow a child

---

[2] Judge Grillo issed an Order that Defendants had to keep Jahi on a ventilator but did not have to increase the level of care they were providing to Jahi such as preforming the tracheostomy or placement of a feeding tube.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

who, for the purposes of the MOTION, at this stage of the proceedings, must be assumed to be a live citizen of the United States, denied recognition of her most basic human right – her Constitutional[3] right to life. (MOTION, p. 20.)

Based on the facts pled in the COMPLAINT, Jahi McMath currently is alive under the law of the United States.  As such, she has an "inalienable right" to life and a Constitutional right to travel freely within the United States. In particular, she has a right to travel with her mother back to the place of her birth and into the bosom of her family.  Plaintiff Nailah Winkfield (WINKFIELD), Jahi's mother, has traveled an exhaustive road seeking to obtain due process.  She should be afforded, on behalf of her daughter, that fundamental right.

WINKFIELD repeatedly has presented this evidence to the named Defendants and repeatedly has requested review of the facts demonstrating Jahi's neurologic activity.  The named Defendants repeatedly have denied her, as they seek to do again here, *any due process*. The Intervening Defendants have interjected themselves in this proceeding for the sole purpose of preventing this Court from examining, for the first time, the overwhelming medical evidence which indicates that numerous portions of her brain currently are functioning, so that Jahi will continue to be continued to be, erroneously, characterized as dead, for the sole purpose of minimizing their possible exposure to monetary damages. (Alameda County Superior Court Case Number RG15760730). That case has been pending for over a year, and no evidence of Jahi's brain function has yet been considered, or is scheduled to be entertained, in that action. Indeed, in that action, they are currently petitioning the trial and appellate courts to dismiss her claims of damages attendant to her need for care as a live person.

Despite Intervening Defendants' mischaracterization of this proceeding, this is not a request for this court to act as a court of appeal.  Nor is it an attempt to have a Federal Court countermand a state, or federal, court order.  Plaintiffs do not seek "three potentially conflicting judgments by three different courts" (MOTION, p. 1). Only one judgment was ever entered. The issue in that case (the December 2013 case) was whether the Intervenors had to provide Jahi

---

[3] The rights to *life,* liberty, and the pursuit of happiness.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

with medical care, whether they had the right to disconnect her from the ventilator, thereby killing her, and whether WINKFIELD had the right to remove her daughter from their hospital before they had an opportunity to do so.  Once WINKFIELD obtained the right to remove Jahi, the other actions were (as more fully explained below) abandoned and deemed moot.

**PROCEDURAL HISTORY**

Plaintiffs initially sought relief from the judicial system in order to prevent CHO from removing Jahi from life support, to provide her medical care and\or to remove her before she was disconnected from life support. In a flurry of legal activity during December, 2013, and January, 2014, they achieved Jahi's removal to a hospital where she was provided with the care which rehabilitated her neurologic condition.

**A.  The Hearings Which Allowed Jahi's Family To Remove Her From Children's Hospital Of Oakland**

On December 12, 2103, Jahi McMath suffered catastrophic but partially reversible brain a catastrophic brain injury because Intervenors allowed her to exsanguinate after undergoing surgery at CHO. Soon thereafter, CHO declared Jahi brain dead and notified her family that they intended to remove Jahi from the ventilator, thereby causing her certain cardio-pulmonary death within minutes.  In order to prevent this removal of necessary life support, on December 20, 2013, WINKFIELD filed an emergency petition with the Probate Court seeking a temporary restraining order. (Case number RP-13-707598). This petition requested four things: (1) that Jahi not be removed from the ventilator that allowed her heart to pump oxygenated blood to her body, (2) that CHO be required to continue the *status quo* as regarded the supportive care that Jahi was receiving, (3) that CHO be required to place a gastric feeding tube and a tracheostomy tube to facilitate her later care and (4) that before Intervenors could kill her WINKFIELD be allowed to move her to a hospital that would treat her as if she was alive. . That court enjoined CHO from withdrawing Jahi's ventilator support and ordered it to continue to provide the care it had been providing while deterring that CHO did not have to provide any additional medical treatment (the tracheostomy and feeding tube) that would allow her to be transferred.  Once the immediate threat to her daughter's life was removed by the TRO, WINKFIELD turned her attention to

4

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

transporting Jahi to the state of New Jersey, which recognizes a religious belief exception in its Uniform Determination of Death Act statute.

Subsequent to issuing the initial TRO, the Probate Court, Judge Grillo, took testimony from Dr. Paul Fischer, its appointed expert. That Court on December 26, 2013, without explicitly ruling that Jahi's death was "irreversible,"[4] found that Jahi at that time "had suffered brain death and was deceased as defined under Health and Safety Code sections 7180 and 7181." ***No evidence regarding Jahi's neurological function has been heard by any court subsequent to this hearing, two years ago.*** That is the essence of her current claims.

On December 30, 2013, WINKFIELD filed a complaint in the U.S. District Court for the Northern District of California (case number 4:13-cv-05993-SBA), seeking more time to move Jahi from CHO. Judge Saundra Brown Armstrong granted WINKFIELD's request in part, enjoining CHO from removing Jahi's ventilator and appointing Magistrate Judge Donna M. Ryu to conduct a mediation, so as to reach a settlement as to the terms under which WINKFIELD could remove her daughter from CHO.[5] Judge Ryu scheduled a settlement conference for January 3, 2014. In that mediation terms for Jahi's removal were established and the partied went back to Judge Grillo who provided additional time so a healthcare facility could be identified that would receive Jahi and provide her the treatment CHO had refused, the very treatment (9 months of hospitalization) which has led to Jahi's current status where she has some neurologic function which demands that she have her determination of death reviewed and corrected by this Court. At that time, after Plaintiffs had achieved their objective of preventing CHO from removing Jahi from life support and had transferred her to another hospital which treated her as a human (rather than as a "corpse," as CHO referred to her), WINKFIELD, dismissed the federal action voluntarily and *without prejudice* before the opposing party had even served an answer since, by that time, the issue was moot, No evidence was ever considered

---

[4] Defendants mischaracterize Judge Grillo's determination that she was irreversibly brain dead. He merely, with the limited evidence presented at the time of the expedited proceeding, as Jahi was deteriorating from lack of basic care, including nutritional support that had been denied her from early December, that there was, at that time, evidence demonstrating that jahi had suffered total, and irreversible, loss of all neurologic activity.
[5] CHO had insisted that Jahi could not be removed from CHO as it would be medically improper for WINKFIELD to remove Jahi while she was dead.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

by the court in this federal proceeding and the dismissal therefore  no preclusive effect, or basis for this Court to find collateral estoppel/res judicata bars the instant action. Indeed, ***the Federal Court dismissed the federal action as moot.*** (Exhibit A to Ingram Declaration.)

On or about the same date (December 30, 2013), as described in the Intervenors' MOTION, WINKFIELD also filed a Petition for Writ of Mandate in the Court of Appeal. This court granted a temporary stay to Plaintiffs, which – along with the settlement facilitated by Judge Ryu – allowed WINKFIELD to remove Jahi from the state. ***The Court of Appeals never considered any evidence of Jahi's neurological function because Jahi had been removed from the state and, as the Intervening Defendants indicate, "the Petition was deemed moot"*** (Exhibit B to Ingram Declaration, also referenced in MOTION at p.7).

Before CHO would release Jahi's body, they required that the Alameda County Coroner take possession of Jahi and then transfer her to WINKFIELD. (See Declaration of Christopher B Dolan in support of this Opposition at ¶ 3, hereinafter "Dolan Dec.")  To remove Jahi from CHO the Coroner required a "Disposition Permit," be issued. (Dolan Dec.at ¶ 4.)[6] A disposition permit allows a family to remove a body for religious preparation and ceremony.  To obtain the Disposition Permit the Public Health Official had to first issue a Death Certificate.  (Dolan Dec. at ¶ 5.) The designated/appointed Health Official, Dr. Mantu Davis, was not available and the Acting Public Health Official originally indicated that she would not issue a Death Certificate or a disposition permit as Jahi was on life support and was not therefore eligible for the issuance of a Death Certificate or a Disposition Permit.  (Dolan Dec. at ¶¶ 6, 7, 8.) WINKFIELD and DOLAN spoke with the Acting Official who reluctantly issued the Death Certificate which WINKFIELD accepted under protest and a Disposition Permit was subsequently issued.  (Dolan Dec. at ¶ 9.) Dr. Davis never signed the Death Certificate.  His name was the result of an automatically generated, computer printed, identification. (*See Death Certificate,* Exhibit C to Ingram Declaration*.*)  The Acting Public Health Official did not sign the Death Certificate.  Part

---

[6] There was no established procedure for this process of removing a person who was on life support.  It, as with everything, was a matter of first impression.  The process was fashioned as part of the mediated settlement achieved by the Federal Mediation which was later adopted an endorsed by Judge Grillo (*Id*. at ¶ 9.)

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

of the Plaintiff's claim in this lawsuit is that the Death Certificate is incomplete, and therefore, under statute is not enforceable.  It was not signed by any attending physician (as required) and it stated no cause of death instead saying "pending."  (*See* Death Certificate, Exhibit C to Ingram Declaration, "Physician's Certification," "Cause of Death.")   Defendants Davis and The County of Alameda refused to rescind the Death Certificate, or provide any process by which Plaintiff could present evidence or be heard.  This is the basis for the Complaint and Cause of Action against them. (Dolan Dec.at ¶ 11.)  After the disposition permit was obtained, Jahi was removed from CHO and was transported to a hospital where she could receive such care. (Dolan Dec. at ¶ 12.) Soon thereafter, the initial Probate Court proceeding was closed as WINKFIELD had achieved her objective: the removal of her Daughter. (Dolan Dec. at ¶ 13, 14.) A judgment in that matter was entered on January 17, 2014, after Jahi's death certificate was issued and after Jahi had left the state. (Exhibit E to State Defendants' Motion to Dismiss, Document 36-2, p, 22.) This final judgment of the Probate Court was not appealed subsequent to its entry, since Plaintiffs had achieved their goal of keeping Jahi alive and ***thus the Probate Court's ruling was in all practicality a moot question.***

### B.   When Jahi Showed Signs Of Neurological Improvement, Her Mother Sought Judicial Review Of New Evidence Regarding Her Present Condition.

By the fall of 2014, Jahi had shown signs of improving neurological function in many portions of her brain, including the motor cortex; the auditory cortex; the hypothalamus; the pituitary region; and the brainstem. These signs included intermittent purposeful movements, the ability of her nervous system to regulate her temperature and heart rate, reactions to the presence and voice of her mother, and the onset of menstruation. (Dolan Dec. at ¶ 16.) Having seen this change in her daughter's neurological condition, WINKFIELD filed a Writ of Error Corum Novis, an arcane proceeding seeking to have Judge Grillo review and consider the multiple declarations from competent physicians who had examined Jahi, after she had been released

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

from the Hospital in New Jersey, with an EEG and MRI.[7] This Writ does not require the Court to have a hearing or receive evidence. It merely is used to provide the Court an opportunity to declare that had it had it been in possession of the evidence at the time of its original decision, it would have reached a different decision.

Once WINKFIELD filed this petition, Dr. Fischer was consulted as the court's previously appointed expert. Without providing any analysis or declaration, and in an entirely conclusory fashion, Fischer said that the newly supplied evidence did not change his opinion. WINKFIELD's attorney asked the Court to permit him and the doctors who had examined Jahi and reviewed the objective evidence so the matter could potentially be determined by the medical practitioners. He then attempted to contact Dr. Fischer, in order to arrange an opportunity for the court's expert to discuss Jahi's condition with the numerous physicians who had examined Jahi during the nine months which had elapsed since Dr. Fischer's pronouncement in December, 2013, that Jahi had suffered "irreversible cessation of function of the entire brain." When this attempt at communication failed, WINKFIELD filed a motion to continue the proceedings, to allow Dr. Fischer and the medical experts who had seen Jahi during the preceding nine month period of her care, stabilization and recovery,[8] "an opportunity for a frank and unscripted dialogue with the experts who are opining that the newly obtained evidence supports a finding that Jahi is not brain dead" (Exhibit D to Ingram Declaration, p. 2). As Dr. Fischer was unwilling or unable to engage in this dialogue, and the very limited nature of the Writ of Error Corum Novis which does not provide for a full and fair hearing on the matter but, instead, a cursory review of new evidence to see if it would have altered the judge's order/judgment had it been known at the time of the previous decision. There is no requirement that the judge grant a trial on the merits in this procedure. ***This proceeding was terminated***

---

[7] The New Jersey Hospital, not wanting to be caught up in the highly controversial issue of Jahi's treatment, would not perform these examinations so Jahi was tested at Rutgers Medical Center immediately upon her discharge from the New Jersey Hospital (which has requested to remain anonymous).  (Dolan Dec. at ¶ 17.)

[8] Plaintiff does not argue that Jahi has had a complete recovery: WINKFIELD is aware that her daughter has suffered severe brain damage, but H&S 7180 is binary and does not account for degree of recovery, or quality of life, it's some (any evidence at all) or none.  Jahi has some.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

*without the <u>presentation of any evidence</u>[9] regarding Jahi's neurological condition and without*
*any ruling that Jahi at that time, in 2014, her then present condition would alter the diagnosis*
*of death   was "brain dead." This proceeding is closed and has no preclusive effect on any of*
*the parties.*

### C.  Having Observed Continued Improvement In Jahi's Condition, Her Mother Seeks Administrative Review of Jahi's Facially and Factually Defective Death Certificate, In Order To Allow Them To Move Back To California.

As Jahi continued to show neurological improvement. WINKFIELD, with the assistance of counsel, also sought the rescission through administrative means of Jahi's death certificate so that they could rejoin their family. As described in detail in the Complaint (¶¶ 121-189), Plaintiffs' counsel then began an administrative odyssey to try and have Jahi's death certificate corrected. These administrative steps were undertaken because during the time when the Writ of Error Corum Novis was being pursued, Alameda County Counsel, at one hearing in that matter, informed Plaintiffs' Counsel that there was nothing that the County could do to change the Death Certificate, as the Certificate had been already "sent to Sacramento." and therefore any relief relating to the Death Certificate would have to come from the California Department of Health. (Dolan Dec. at ¶¶ 19, 20.) As elaborated *supra* Plaintiff's counsel then went to The Bureau of Vital Records, in Sacramento, only to be told that the County Public Health Officer (Dr. Davis) was the one who would have to change the Death Certificate. (Dolan Dec. at ¶21). Dolan spoke to Dr. Davis who said that the matter would have to be addressed by County Counsel. (Dolan Dec. at ¶ 22; Exhibit F to Ingram Declaration; Exhibits H-L to COMPLAINT)    Dolan then contacted Alameda County Counsel David Nefouse who ultimately, without any hearing or process, summarily refused to provide a hearing or consider the Plaintiff's evidence. (Dolan Dec

---

[9] It is Plaintiff's understanding that Dr. Fischer never even viewed the video evidence of Jahi responding to commands from her mother, the evidence showing her heart rate climbing as her mother, speaking to her, began crying, the EEG, the MRI, or the other proffered evidence.  There is strong evidence of Dr. Fischer having a bias as he pronounced Jahi dead and, if she now isn't, he may suffer embarrassment and or lose credibility\face by admitting that Jahi is now alive.  It should be noted that Plaintiff is not seeking a determination that Dr. Fischer did not have a basis for his diagnosis, with the limited information he had and while Jahi's brain had suffered significant trauma and swelling: plaintiff now is seeking relief that *now, in 2016, Jahi has brain function and is not dead.*

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

at ¶ 23; Exhibit F to Ingram Declaration; Exhibit L to Complaint)  Plaintiffs had run full circle as each agency, department, and official passed the buck without ever so much as providing a hearing.  That is why we have this suit and are suing *these defendants*.  Intervenors medical malpractice problems, and defenses, have no bearing on the instant issues.  Plaintiffs in this action request that this Court ***for the first*** time consider the overwhelming scientific evidence that for the past year and a half, Jahi has exhibited function of numerous portions of her brain and therefore is a living person, per § 7180.

Thus, having had their request rejected at both the state and county levels by the named defendants in this action, Plaintiffs sought redress for the violation of their federal rights in this venue. Plaintiffs in this action request that this Court for the first time consider the overwhelming scientific evidence that for the past year and a half, Jahi has continued to exhibit function of numerous portions of her brain and therefore is a living person, per § 7180. (Exhibit E to Ingram Declaration, videos of Jahi McMath exhibiting purposeful movement, filmed during February and May, 2016.)

The instant action seeks federal remedies for the violation of Jahi's federal constitutional and statutory rights. It seeks injunctive and declaratory relief from the State and County Defendants who have violated Jahi's right to due process and other rights under color of law. This operative complaint does not include a single cause of action upon which any court has ruled at any time. It does not include a single cause of action which currently is pending before any court.

### D.  The Medical Malpractice Action, Referred To By Defendants as "The Damages Litigation."

Over a year ago, Jahi and members of her family, through entirely different lawyers, initiated a medical negligence action in Alameda Superior Court. This medical malpractice case has had a tortured procedural history, as the Intervening Defendants have taken every step possible to delay that court's hearing the facts surrounding Jahi's injury, including unsuccessfully making many of the same arguments they again have raised in the instant MOTION. The Intervenors finally answered that Complaint, after their second demurrers were

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

denied. As stated *supra*, the defendants not only deny liability, therefore never reaching damages, they are actively seeking to bar any presentation or consideration on that point. Currently, the demurrer of another defendant, with the same allegations raised before by the other two defendants, is scheduled to be heard this August.  Intervenor Rosen filed and was granted a motion under California Code of Civil Procedure § 166.1 for immediate appellate review of two specific questions which are procedural as to what may be considered by the State Court judge (who is not Judge Grillo.  The Presiding Judge had the opportunity and ability to reassign the mater to Judge Grillo but did not do so.) As a result, no meaningful progress has been made in moving the Damages Litigation case forward despite its having been filed months before the instant matter. No evidence of Jahi's neurological function has been presented to that court and it is questionable whether it will ever be presented in that forum.  No date for argument has been scheduled.  It is entirely within the Appellate Court's purview to summarily, without argument, deny the Writ. Plaintiffs seek Due Process in this action not an uncertain, contingent, possibility that the issue of Jahi's current status will ever be considered, much less heard in the Damages Litigation.  Basic human rights should not be contingent on some theoretical future action by the State Court, which will not be able to give Plaintiffs any of the relief requested from this Court.

### E.  Summary of Prior and Ongoing Actions

Plaintiffs are not forum shopping. In no other forum has there been any hearing of Plaintiff's evidence of Jahi's living status. In no other forum have Plaintiffs ever alleged that the Death Certificate is invalid or that she was denied due process by the State and County.  In no other forum has the conduct of these Defendants been examined.  In no other forum have Plaintiffs sought the declaratory and injunctive relief requested in the instant case. ***Plaintiffs are not seeking federal review of a prior state order***, as no state court has ever taken up the issue of Jahi's current neurological function.  Again Plaintiff does not seek to overturn Judge Grillo's Order, she just wants Due Process to present evidence that the irreversibility contemplated by Health and Safety Code 7180, has occurred.

The only pending lawsuit involving either Plaintiff is the Damages Litigation, which does

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

not involve any of the named Defendants in the instant matter and does not seek any of the relief sought herein.  It has been ongoing for more than a year and is still at the demurrer stage. No evidence has been presented to that court about Jahi's brain function, and no hearings having been scheduled for the submission of such evidence. No decision by this Court will have any unfair effect on any party in the medical malpractice case, since each defendant therein has had an opportunity to intervene herein.

## II.      MOTION TO STRIKE

Fed. R. Civ. P. 12(d) requires that if prior to a Rule 12 motion,

> "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

In the instant matter, the Defendants have submitted voluminous material to this Court, requesting that this Court take judicial notice thereof. When matters outside the challenged document (in this case the Complaint) are presented, the Court must either exclude the additional material and decide the matter based on the Complaint alone or convert the motion to dismiss to a motion for summary judgment under Rule 56. *Friedl v. New York*, 210 F.3d 79, 84 (2d Cir. 2000); see also Wright & Miller Federal Practice & Procedure, § 1366 (3d Ed.).

In the instant matter, Defendants urge this Court to consider many matters not contained in the challenged pleading and apparently expect this Court to wade through hundreds of pages of hearsay prior to making a determination of whether or not Plaintiffs have properly pled any of their causes of action. However, only materials which are a part of the complaint may be considered in a motion to dismiss. See *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds by Galbraith v. Santa Clara, 307 F.3d 119 (9th Cir. 2002)); see also *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992); *MacArthur v. San Juan*, 309 F.3d 1216, 1221 (10th Cir. 2002); *Schmitz v. Mars. Inc.*, 261 F.Supp.2d 1226, 1229 (D. Or. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997)). In contrast, Documents incorporated by reference

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

as part of a complaint are not considered matters outside the pleadings, as they are a part of the challenged pleading itself. *In re: Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999). As such, it is proper for this Court to consider the medical material incorporated by reference into Plaintiffs' Complaint when considering the instant motion.

Therefore, Plaintiffs request that this Court limit its consideration to material contained in the Complaint and attached documentation.

### III.    Legal Standard

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a disfavored remedy and may only be granted in extraordinary circumstances. *Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003); *United States v. Redwood*, 640 F.2d 963,966 (9th Cir. 1981). On this motion, all allegations of material fact must be accepted as true and construed in the light most favorable to Plaintiffs. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-8 (9th Cir. 1996); *In re Silicon Graphics, Inc. Sec Litig.,* 183 F.3d 970, 983 (9th Cir. 1999). The Court must also draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

If this Court finds the Complaint inadequate, it should "freely give leave to amend when there is no undue delay, bad faith, dilatory motive, undue prejudice to the opposing party by virtue of.... the amendment, [or] futility of the amendment." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### IV.    ARGUMENT

A.   This Court Should Exercise Its Authority Under The Declaratory Judgment Act To Adjudicate Plaintiffs' Petitions For Declaratory Relief

Plaintiffs in their declaratory judgment action seek simply (1) "a judicial declaration that JAHI McMath is not [at this time] dead and that her Death Certificate is inaccurate, facially deficient, and invalid," and (2) a declaration that "JAHI McMath has exhibited by acceptable medical standards clear signs of brain function subsequent to December 23, 2013, and that she

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

does not have irreversible cessation [of] all functions of the entire brain, including the brain stem." (COMPLAINT, § § 295, 303.)

*Neither of these two questions has ever been examined by any other court*; neither question will necessarily be decided in any pending state court proceeding; neither question can be more efficiently resolved in a state court, will create unnecessary entanglement of federal and state matters, or can be properly characterized as "mere procedural fencing, in the sense that the action is merely the product of forum-shopping" (*United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir.1998)). *Plaintiffs do not seek to re-litigate the condition of Jahi's brain function in 2013, over two years ago,* but instead request this Court to be the first court to consider whether or not, as of this date, Jahi exhibits some function of some portion of her brain. This is clear, as Jahi's current brain function and not her function two years ago, forms most of the factual basis of the COMPLAINT (see, e.g., COMPLAINT, ¶¶ 14-17, 20, 100, 101, 102, 109, 111-116, 124-152, 187, 191, 198, 199, 200, 204).

Contrary to Intervenors' apparent implication, not one of the numerous closed cases has any bearing whatsoever on these questions, since each of them was closed years ago, and thus the evidence of Jahi's current brain function, upon which this Court's decision must be based, did not even exist during the pendency of those closed cases. Furthermore, Intervenors mischaracterize the facts when they call the instant proceeding "an archetypal reactive proceeding … under *Continental Cas. Co. Inc.*  and *R.R. Street & Co.*" Reactive litigation, as described in detail in *Continental,* is litigation *filed by the defendant* in "non-removable state court action presenting the same issues of state law." This petition for declaratory relief was filed by the *plaintiffs* because this is the most appropriate forum for this declaratory action, since the medical malpractice case very likely may be resolved without any finding whatsoever regarding Jahi's current state of brain function. At a minimum – the jury in the malpractice case will have to rule on Duty, Breach, and Causation before it possibly reaches the issue of Jahi's current neurological status.

Intervening Defendants cite the *Wilton/Brillhart* doctrine as a reason to dismiss Plaintiffs' declaratory action. However, this doctrine requires that "another suit [be] pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v.*

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

*Excess Ins. Co. of Am.,* 316 U.S. 491, 495 (1942). **The medical malpractice case does not present the same issues as the instant matter, nor does it involve the same parties**. The *Brillhart* Court also required an enquiry as to "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Id. See also Wilton v. Seven Falls Co.,* 515 U.S. 277, 283 (1995). These threshold requirements are not met in the instant matter, since none of the defendants initially named in the instant matter was or could have been named by the plaintiffs in the ongoing state medical malpractice case, nor have these defendants gratuitously sought intervention in the malpractice case.

Furthermore, even if the instant matter met the threshold for abstention under *Brillhart*, there is a strong presumption against abstention in declaratory judgment actions. *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). As described below, Plaintiffs submit that the *Brillhart* factors as well as this presumption support a denial of the Defendants' MOTION and support this Court's retaining jurisdiction over the pending declaratory action.

### 1.   The Court Will Not Needlessly Determine State Law Issues if it Maintains Jurisdiction Over the Plaintiff's Declaratory Action

The first *Brillhart* factor, that a court should avoid needless determination of state law issues, weighs in favor of denying the MOTION. *See Dizol*, *supra,* 133 F.3d 1220, 1225 (9th Cir. 1998). Plaintiffs seek consideration and resolution of Federal issues arising out of Federal Law. The pending medical malpractice case, as discussed above, may never lead to any judicial determination of the current state of Jahi McMath's brain function. If and when such a determination may occur is unclear, but the malpractice case has been pending for over a year, that case is still at the demurrer stage, and absolutely no fact finding regarding Jahi's neurological condition has been conducted.

### 2.   The Plaintiff Has Not Engaged in Forum Shopping

The second *Brillhart* factor, that a court should discourage parties from filing declaratory actions as way to forum shop, also weighs in favor of denying the MOTION. The

15

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs have sought redress of the deprivation of ***federal constitutional and statutory rights*** in a federal forum because a federal bench trial is the most appropriate setting for an adjudication of these claims. Seeking redress for the violation of ***Federal*** statutes and the deprivation ***of Federal Constitutional Rights*** in a Federal Court is not forum shopping.

### 3.   Duplicative Litigation Is Not Likely if the Court Maintains the Plaintiff's Declaratory Judgment Action

Intervenors state that there is a "very high risk of duplicative litigation" (MOTION, p. 14), since "In the currently pending Damages Action in Alameda Superior Court, the Court of Appeal is presently considering the issue of whether McMath should be **permitted to re-litigate the issue of whether she is dead under California law.**" (*Id. emphasis added*.) (The issue actually presented in that matter is whether Jahi ***was*** dead in 2013 and does that determination have preclusive effect on her receiving a hearing on, or determination of , whether she ***is dead.***) Plaintiffs do not seek through this declaratory action to ***relitigate*** any issue whatsoever. Plaintiffs seek through this declaratory action to have a court to adjudicate ***for the first time*** the current status of Jahi's brain activity. Intervening Defendants seem to misunderstand or to misstate the only factual issue before this Court: what is Jahi's ***current neurological status***. This Court can rule on this issue without reexamining any evidence ever presented to any court at any time. The instant action does not seek ***re-litigation*** of any issue whatsoever.

### 4.   The Other Factors Considered by The Ninth Circuit Support This Court's Retaining Jurisdiction Over This Declaratory Action

The Ninth Circuit examines numerous factors, in addition to the three Brillhart factors cited by the Intervenors, in evaluating  the appropriateness of a declaratory relief action:   1) whether the declaratory relief action will settle all aspects of the controversy; 2) whether the declaratory relief action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory relief action is being sought for the purposes of procedural fencing or to obtain a "res judicata" advantage; and 4) whether the use of a declaratory relief  action will result

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

in an entanglement between the Federal and State Court systems. It also considers the convenience of the parties and the availability and relative convenience of other remedies. (*Dizol, supra*, 133 F.3d 1220 at 1225 n. 5 (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir.1994) (J. Garth, concurring)).

Each of these factors weigh in favor of this Court's retaining jurisdiction over this Declaratory Relief action. The request for a declaratory judgment by this Court will settle all aspects of the controversy between Plaintiffs and the named defendants: it will serve a useful purpose in clarifying the legal question at issue, namely whether Jahi McMath **currently** exhibits signs of brain function. Plaintiffs have not sought this declaratory relief for the purposes of procedural fencing or to obtain a "res judicata" advantage – they have pursued this action in order to vindicate Jahi's most essential right to life and in order to allow Jahi and her mother to move back to their home in California. *See Plum Creek Timber Co. v. Trout Unlimited*, 255 F. Supp. 2d 1159, 1166-67 (D. Idaho 2003);  *Dizol, supra*, 133 F.3d 1220, 1233 (9th Cir. 1998).

No entanglement between the Federal and State Court systems will occur because no State or County Defendant is a party to the Damages Litigation and because answering the questions raised in this declaratory action is not **necessary** to achieving an outcome (through settlement or verdict) in the that action. Again, the Medical Malpractice case will require a finding of Duty, Breach, and Causation before the jury will even consider the issue of Jahi's current status and its effect if anything on the damages Intervenors will have to pay Jahi and her mother.  Finally, there is no inconvenience to any party of litigation in this forum (in fact, the Intervenors have insisted upon being involved in the instant litigation over Plaintiffs' objection), and **this declaratory action is the most readily available and convenient of all available remedies, since it can focus entirely on the primary issue at question**  (does Jahi currently exhibit some brain function) without having to take into account the Intervenors' negligence or the dollar damages that this negligence has caused to Jahi and her family.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.   The *Pullman* Abstention Doctrine Does Not Justify Dismissal Of This Case or A Stay In The Proceedings

Intervening Defendants, by joining in the State and County Defendants' motions to dismiss, apparently assert that the Pullman abstention doctrine applies to this case. State Defendants did not raise this abstention principle in their 12(b)(6) motion, and County Defendants devoted only three sentences to this complex, discretionary doctrine. As a result, Plaintiffs did not address this issue in depth in their opposition to the State and County Defendants' motions. During Oral Argument, this Court questioned the parties regarding *Pullman's* applicability to this case. As described below, this discretionary abstention principle is not applicable to the instant proceedings. Even if it were, this Court should not exercise its discretion to abstain under *Pullman*, given the likelihood of unnecessarily complicating the state medical malpractice case and the fundamental nature of the constitutional rights involved here. See *City of Houston v. Hill*, 482 U.S. 451, 467–68 (1987); see also *Harman v. Forsennius*, 380 U.S. 528, 535 (1965); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 63–64 (1st Cir. 2003) (noting that the delay involved in abstention is problematic where First Amendment rights are implicated).

*Pullman* abstention applies when federal constitutional claims arise from unsettled issues of state laws. It is a *discretionary* principle, which allows federal courts to choose to abstain from exercising their jurisdiction over a matter, to prevent federal courts from predicting what state courts would decide, ***so that state courts are afforded the first opportunity to interpret state law.*** "The [*Pullman*] doctrine contemplates that deference to state court adjudication only be made where the issue of state law is uncertain. If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Harman v. Forssenius*, 380 U.S. 528, 534-35 (internal citations removed). Here, Plaintiffs do not claim that §7180 is unclear, only that Jahi does not meet its criteria for "brain death."

Because "Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal

18

constitutional claims," ***Pullman abstention is available only in narrowly limited, special circumstances.*** *Zwickler v. Koota,* 389 U.S. 241, 248 (1967). "It is better practice, in a case raising a federal constitutional or statutory claim, to retain jurisdiction, rather than to dismiss." *Zwickler,* 389 U.S. at 244 n. 4.

*Pullman* abstention generally is appropriate ***only if three conditions are met***: (1) the complaint "requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *Potrero Hills Landfill, Inc. v. Cnty. of Solano,* 657 F.3d 876, 888–89 (9th Cir.2011) (quoting *Spoklie v. Mont.,* 411 F.3d 1051, 1055 (9th Cir.2005)).[10] Proper application of these conditions is meant to ensure federal courts defer "to state court interpretations of state law" while avoiding "'premature constitutional adjudication' that would arise from 'interpreting state law without the benefit of an authoritative construction by state courts'." *Id.* (quoting *Gilbertson v. Albright,* 381 F.3d 965, 971 n. 6 (9th Cir.2004) (en banc)) (internal quotation marks omitted). *See also Harris v. Arizona Indep. Redistricting Comm'n,* 993 F. Supp. 2d 1042, 1066-67 (D. Ariz. 2014), *aff'd,* 136 S. Ct. 1301 (2016).

Applying the Ninth Circuit's current formulation of the *Pullman* factors, it is clear that *Pullman* abstention does not apply to the instant matter. First, this Court need resolve no "sensitive question of federal constitutional law" in order to rule on many of Plaintiffs' causes of action. ***Instead, this court need only, for the first time, consider a narrow factual question: does Jahi McMath currently exhibit some brain activity?***

Next, there is no reason to anticipate a timely "definitive ruling on [any] state law issues" which will "moot or narrow" any constitutional issue raised in the instant matter. *Potrero*

---

[10] Note that the first of these three criteria differs from that cited by the County Defendants in their motion to dismiss (that motion cited an outdated Ninth Circuit case, *Fireman's Fund Ins. Co. c. City of Lodi,* 302 F3d. 928 (9th Cir. 2002)). This distinction is telling in this instant matter, since at its heart this proceeding focuses on a question of fact – does Jahi McMath currently exhibit function of any portion of her brain. Although Jahi's constitutional rights have been violated by the named defendants, the root of this lawsuit is the preceding relatively simple to answer question of fact.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

1  *Hills,* 657 F.3d 876, 888–89 (9th Cir.2011). Again, this case centers on a question of fact, not

2  one of law. There is one pending state case, the medical malpractice case against the Intervening

3  Defendants. That case depends on whether or not the medical malpractice Plaintiffs can prove

4  Duty, Breach, Causation, and Damages. Most malpractice cases settle without any adjudication

5  of any facts whatsoever.[11] As such, ***the state malpractice court is unlikely to moot or narrow***

6  ***any issue whatsoever raised in the instant proceedings***.

7       Finally, no "possibly determinative issue of state law is unclear." *Id.* § 7180 is clear. It

8  requires "irreversible cessation of all functions of the entire brain, including the brain stem" to

9  determine brain death. The fact that Jahi currently exhibits function of numerous portions of her

10  brain indicates that, per § 7180, Jahi is not dead. No clarification of this statute is needed in order

11  for this Court to grant the declaratory and injunctive relief sought in the instant proceedings.

12       Finally, even if this Court were to find that all three of the Pullman factors apply here,

13  ***abstention would be inappropriate here since it would be likely to lead to prolonged litigation***

14  ***and unnecessarily to complicate the state court medical malpractice action.*** Invoking *Pullman*

15  "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of

16  its exercise." *Harrison v. NAACP*, 360 U.S. 167, 177 (1959). Should this Court find that *Pullman*

17  applies, the instant proceedings would be stayed but not dismissed. Plaintiffs would be required

18  to litigate any "unclear issues" of state law in a state court but would be required to ask the state

19  court presiding in a jury trial over a medical malpractice issue to construe all such issues in light

20  of the numerous federal issues pending in this forum. See Charles Alan Wright et al., Federal

21  Practice & Procedure § 4243 (3d ed.) (2007). This would unnecessarily complicate the

22  proceedings in an already complex case, which has gone on for over a year without the

23  presentation of any evidence, in which a demurrer is pending, and which has already led to one

24  interlocutory appeal. ***Invoking this discretionary principle therefore would be antithetical to***

25  ***principle of conservation of judicial resources.*** A stay in the instant matter would not likely

26  ───────────────────

27  [11] Of all medical malpractice cases filed, less than eight percent of those cases are disposed of by a judge or jury. Robert C. LaFountain et al., *Examining the Work of State Courts: An Analysis of 2008 State Court Caseloads*

28  (National Center for State Courts 2010) at 26; U.S. Department of Justice, Bureau of Justice Statistics, "Tort Bench and Jury Trials in State Courts, 2005," NCJ 228129 (November 2009).

20

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

resolve any of the issues pending before this Court; it would unnecessarily complicate a state court proceeding; and it likely would leave this Court facing exactly the same factual question years from now, after the resolution of the medical malpractice case. The only certainty is that, during this prolonged period, Jahi McMath will continue to be denied her most fundamental basic human right – the recognition of her existence as a living human being.

C.   The Probate Court's Ruling In January, 2014, Does Not Have Preclusive Effect
Regarding Plaintiff's Current State Of Brain Function

1.   *The Issues of Estoppel and of the Finality of a Determination of Death Have*
*Already Been Rejected by the Alameda County Superior Court.*

**Intervening Defendants were aware when they filed this MOTION that the Alameda County Superior Court had rejected the same estoppel arguments that they now are making for a second time to this Court.** Intervening Defendants' arguments in essence assert two propositions: (1) the 2013 probate action has an estoppel effect which precludes this Court from considering Plaintiffs' petition for declaratory and injunctive relief, and (2) any determination of death under § 7180 is final and not subject to later reexamination, no matter what new evidence of brain function arises thereafter. They ignore the fact that Plaintiffs did not pursue all available appeals at the time because the issues before the Probate Court and the Court of Appeals (through the Petition for Writ of Mandate) became moot for all practical purposes as soon as Jahi left the state.

Judge Robert B. Freedman rejected both of these arguments in his March 15, 2016, Order denying Intervenor CHO's Demurrer and Motion to Strike Complaint (Exhibit G to Ingram Declaration, Order of Judge Freedman, hereinafter "FREEDMAN ORDER"). Judge Freedman explicitly considered all of the arguments that the Intervenors have recycled in the instant Motion. Applying California law, Judge Freedman found them lacking. Regarding the purported estoppel effect of the probate action, he ruled:

> [T]he court is not persuaded that it would be appropriate to determine the collateral estoppel effect of the amended order and judgment in [the probate action] at the pleading stage, based solely on the allegations in the FAC and the matters of which judicial notice is taken. Collateral estoppel is an affirmative defense as to which

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO
DISMISS**

the defendants bear a "heavy" burden of proof (Kemp Bros. Const., Inc. v. Titan Elec. Corp. (2007) 146 Cal.App.4th 1474, 1482.) There are at least some aspects of the collateral estoppel determination that may require a more developed factual record. The court has concerns, for example, about whether the factual determinations in the context of the expedited probate petition - which was filed for the purpose of determining whether CHO should be ordered to continue providing medical care to Jahi - should necessarily be binding on Jahi in a civil lawsuit for damages brought on her own behalf. There are circumstances in which "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." (Rest.2d Judgments § 28(3).) Here, the prior expedited petition did not involve the same type of discovery and presentation of evidence as is involved in a civil action. (ORDER, p. 1-2.)

In doing so, Judge Freedman emphasized that "California law on issue preclusion permits 'reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties.' (City of Oakland v. Oakland Police and Fire Retirement System (2014) 224 Cal.App.4th 210, 230.) Jahi has included new allegations in the FAC as to such changed circumstances. Such allegations are to be taken as true on demurrer. (See, e.g., Aubry v. Tri-City Hospital Dist. (1992) 2 Ca1.4th 962, 966-967.) The court is hesitant to determine that, at the pleading stage, there is no factual issue as to whether the facts have changed or new facts have occurred."

Judge Freedman also addressed the Intervenors' arguments regarding the alleged "finality" (MOTION, p. 1, 2, 9, 10, 11, 21) and "irreversibility" (MOTION, p. 22) of a determination of death under § 7180. Judge Freedman  found that "California law on issue preclusion permits reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties." (FREEDMAN ORDER, p. 2, internal citation and quotation removed) and held that:

"As to the asserted finality of a determination of death under Health and Safety Code sections 7180 and 7181, the court does not find the authority cited by CHO sufficient for the court to determine, at the pleading stage, that the determination made in the context of Winkfield's probate petition is to be accorded finality for any and all other purposes, independent of considerations of collateral estoppel discussed above. … The court is not persuaded by CHO's argument that Plaintiffs are "improperly asking this court or a jury to reject the accepted medical standards used to determine irreversible brain death." Plaintiffs are not, by way of this action,

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

expressly seeking any redetermination or reversal of the matters in the prior probate proceeding or seeking to apply standards other than those set forth in the UDDA. Instead, they have brought a civil action independent of the prior proceeding, which includes a cause of action asserted on Jahi's behalf. CHO, as the party moving for dismissal of that cause of action, bears the burden of showing that it is insufficient or barred as a matter of law, and the court determines that CHO has not met this burden at the pleading stage, based solely on the allegations and matters of which the court takes judicial notice." (FREEDMAN ORDER, p. 2-3.)

The instant matter, as with every aspect of this case, raises issues of first impression. The only California Superior Court judge to analyze these issues at a recently applied California law demurrer stage, Judge Freedman, ruled that dismissal was not appropriate. He rejected each one of the Intervening Defendants' arguments regarding estoppel, finality, and equity even before they filed they Intervened in the instant action.   If anyone is forum shopping it is Intervenors/Defendants who seek this Court to rule in a manner inconsistent to Judge Freedman's order.

### 2. *There Are Medical, Equitable, and Legal Bases Upon Which Plaintiffs' Claims Should Be Litigated*

Intervening Defendants themselves admit that "California courts are not obligated to apply collateral estoppel … 'if new facts or changed circumstances have occurred since the prior decision'" (MOTION, p. 20). Here, ***the circumstances have changed***, as Jahi has shown signs of brain function during the two years since the 2013 litigation. The Intervenors characterize the instant proceedings as "relitigation of death," again misstating the posture of the instant proceedings, ***which seek, for the first time, to litigate the current state of Jahi's brain function***, as well as the restoration of her civil rights as a human being, not simply as a dead "body," as Intervenors repeatedly and callously refer to her (MOTION, pp. 3, 7, 10, 22).

### a) Medical Basis

In December, 2013, Dr. Paul Fischer, a court-appointed expert, determined at that time that Jahi had no demonstrable brain function and testified that in his opinion Jahi would never recover any such function. The court-appointed expert likely testified to the best of his ability as

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

a physician. Judge Grillo, in good faith, relied on that testimony, and ruled that as of that date, the proper legal standard had been met to declare Jahi brain dead per pertinent statute.

However, Dr. Fischer did not, and could not, accurately foretell the future. Jahi is the first child to have been declared brain dead who has survived this long and demonstrated intact brain matter, gone into puberty, and has electrical activity in her brain and an ability to respond to commands. Fortunately, as documented by numerous physicians, nurses, respiratory technicians, and family members, Jahi has, during the intervening twenty-nine months, repeatedly and consistently exhibited brain function, as described in the COMPLAINT. Any qualified physician who today examines Jahi and her medical record should be able to verify the *present* numerous signs of brain function.

As such, *Jahi does not currently meet California's (or, in fact, any state's) definition of "brain death."* Medical predictions of patients' future clinical courses are by their very nature speculative. Dr. Fischer's **forecast** of Jahi's future brain function, in 2013, while being his best prediction with the information available to him and Jahi being in acute distress, has been, as are many forecasts (even the weather) proven to be erroneous.  Every medical diagnosis is subject to reassessment and modification based on future observations. The current observations, and tests, by Jahi's doctors, nurses, paramedical professionals, and family members provide an ample medical basis for a judicial determination of Jahi's current level of brain activity.

b)  Legal Basis

Both California and Federal law provide a legal basis upon which the discovery of new facts, which were not available to the parties during an earlier proceeding, may call for "reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties" (*City of Oakland v. Oakland Police and Fire Retirement System* 224 Cal.App.4th 210, 230 (2014)) (Cited by Judge Freedman in his ORDER, p. 2). Fed. R. Civ. P. 60(b) states in part that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: …(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

c)   Equitable Basis

The equitable basis upon which this Court may and should allow these proceedings to go forward is obvious. Based on the pleadings: A little girl was declared brain dead two years ago. She does not currently meet the statutory definition of brain death. The named defendants, despite having the ability to do so, refuse to correct a facially invalid and factually inaccurate government document. Only because of this refusal, this little girl and her mother must live in exile thousands of miles from their loved ones. This Court has jurisdiction over the parties. This Court has the inherent equitable power to right this wrong. And so it should.

Judge Freedman articulated this equitable principle in his ORDER: "even where the traditional elements of collateral estoppel (privity, finality and necessary determination of identical issue in prior adjudication) are met, there is also an "equitable nature of collateral estoppel" such that the doctrine is to be applied "only where such application comports with fairness and sound public policy." (*Smith v. Exxon Mobil Oil Corp*. (2007) 153 Cal.App.4th 1407, 1414.) The court believes it would be premature to determine and apply such considerations based solely on the allegations and matters of judicial notice before it, without a more fully developed factual record." (FREEDMAN ORDER, p. 4.)

Despite Intervening Defendants' arguments to the contrary, this Court has ample medical, legal, and equitable bases upon which to allow the instant matter to proceed. There is also a moral imperative, this is not an issue of money or property. It is an issue of human dignity, human rights, and the right to life itself.


## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Intervening Defendants' motion to dismiss and that this Court not stay this matter pending the outcome of the state medical malpractice trial. In the event that this Court finds that Plaintiffs has failed to state a claim upon which relief can be granted, Plaintiffs request that they be allowed to amend the operative Complaint.

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**

1    Dated: June 3, 2016                    **THE DOLAN LAW FIRM**

2
                                           By*: /s/ Christopher B. Dolan*
3
                                              CHRISTOPHER B. DOLAN
4
                                              Attorney for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO INTERVENING DEFENDANTS' MOTION TO DISMISS**