Kenneth R. Pedroza (SBN 184906)
kpedroza@colepedroza.com
Dana L. Stenvick (SBN 254267)
dstenvick@colepedroza.com
COLE PEDROZA LLP
2670 Mission Street, Suite 200
San Marino, CA 91108
Tel: (626) 431-2787
Fax: (626) 431-2788

Attorneys for Defendants In Intervention
UCSF BENIOFF CHILDREN'S HOSPITAL OAKLAND
and FREDERICK S. ROSEN, M.D.

G. Patrick Galloway (SBN 49442)
pgalloway@glattys.com
Joseph E. Finkel (SBN 167397)
jfinkel@glattys.com
GALLOWAY, LUCCHESE, EVERSON & PICCHI
A Professional Corporation
2300 Contra Costa Blvd., Suite 350
Pleasant Hill, California  94523-2398
Tel: (925) 930-9090
Fax: (925) 930-9035

Attorneys for Defendant In Intervention
UCSF BENIOFF CHILDREN'S HOSPITAL OAKLAND

Thomas E. Still (SBN 127065)
tstill @hinshaw-law.com
Jennifer Still (SBN 138347)
jstill@hinshaw-law.com
HINSHAW, MARSH, STILL & HINSHAW LLP
12901 Saratoga Avenue
Saratoga, California  95070
Tel: (408) 861-6500
Fax: (408) 257-6645

Attorneys for Defendant in Intervention
FREDERICK S. ROSEN, M.D.

1

UNITED STATES DISTRICT COURT

2

FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

SAN FRANCISCO DIVISION

4

5

6

7

8

9

10

11

12

13

14

JAHI MCMATH, a minor, NAILAH
WINKFIELD, an individual, as parent,
as guardian, and as next friend of Jahi
McMath, a minor,

                    Plaintiffs,

v.

STATE OF CALIFORNIA; COUNTY
OF ALAMEDA, et al.,

                    Defendants.

Case No. 3:15-cv-06042-HSG
[Hon. Haywood S. Gilliam, Jr.]

**REPLY IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS'
COMPLAINT BY CHILDREN'S
HOSPITAL AND DR. ROSEN**

Date Filed:   December 23, 2015
Hearing:      August 4, 2016
Time:         2:00 p.m.

15

16

17

18

19

20

        Come now UCSF Benioff Children's Hospital Oakland ("Children's Hospital") and Frederick S.
Rosen, M.D. ("Dr. Rosen") and submit this reply in support of their Motion to Dismiss  plaintiffs'
Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and joinders to
Motions to Dismiss filed by the State of California and Alameda County defendants pursuant to 12(b)(1)
and 12(b)(6).

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................1

II.     THE COURT SHOULD EXERCISE DISCRETION TO DISMISS THIS CASE
        UNDER *BRILLHART* AND *WILTON* ...............................................................................3

        A.      Dismissal Should Be Entered To Avoid Needless Determination Of State Law
                Issues ...............................................................................................................................3

        B.      Dismissal Should Be Entered To Discourage Forum Shopping.....................................3

        C.      Dismissal Should Be Entered To Avoid Duplicative Litigation ....................................5

III.    COLLATERAL ESTOPPEL APPLIES AND PRECLUDES THIS COURT FROM
        ASSUMING THAT MCMATH IS ALIVE ............................................................................6

        A.      All Requirements For Applying Collateral Estoppel Have Been Satisfied ...................6

        B.      The Changed Circumstances Exception To Collateral Estoppel Does Not
                Apply...............................................................................................................................7

IV.     PUBLIC POLICY FAVORS APPLICATION OF COLLATERAL ESTOPPEL .................10

V.      PULLMAN ABSTENTION IS APPROPRIATE ..................................................................12

VI.     THE COURT SHOULD CONSIDER ALL EVIDENCE PROPERLY SUBJECT TO
        JUDICIAL NOTICE AND DENY PLAINTIFFS' MOTION TO STRIKE .........................14

VII.    CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Medtronic, Inc.*,
    285 F.3d 801 (9th Cir. 2002)...................................................................14

*Continental Cas. Co. v. Robsac Indus.*,
    947 F.2d 1367 (9th Cir. 1991).....................................................................4

*C-Y Dev. Co. v. City of Redlands*,
    703 F.2d 375, 377 (9th Cir. 1983) ............................................................13

*Dority v. Superior Court*,
    145 Cal.App.3d 273, 193 Cal.Rptr 288 (1983) ........................................11

*Evans v. Celotex*,
    194 Cal.App.3d 741, 238 Cal.Rptr. 259 (1987)..........................6, 8, 9, 10

*Fairchild v. Bank of Am. Nat. Trust and Sav. Ass'n.*,
    165 Cal.App.2d 477, 332 P.2d 101 (1958) ................................................6

*Harris v. County of Orange*,
    682 F.3d 1126 (2012) ...............................................................................15

*In re Est. of Redfield*,
    193 Cal.App.4th 1526, 124 Cal.Rptr.3d 402 (2011) ...........................6, 11

*Jorgensen v. Jorgensen*,
    32 Cal.2d 13, 193 P.2d 728 (1948)...........................................................10

*Kulchar v. Kulchar*,
    1 Cal.3d 467, 462 P.2d 17 (1969) .............................................................10

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)....................................................................14

*Lucido v. Superior Court*,
    51 Cal.3d 335, 795 P.2d 1223 (1990) ........................................................6

*Murphy v. Murphy*,
    164 Cal.App.4th 376, 78 Cal.Rptr.3d 784 (2008) ....................................10

*R.R. St. & Co. Inc., v. Transport Ins. Co.*,
    656 F.3d 966 (9th Cir., 2001)....................................................................4

*San Remo Hotel v. City and County of San Francisco*
    145 F.3d 1095 (9th Cir. 1998)..................................................................12

*Sinclair Oil Corp. v. County of Santa Barbara*
    96 F.3d 401 (9th Cir.1996) ............................................................................12

*Union P. R.R. Co. v. Santa Fe P. Pipelines, Inc.*
    231 Cal.App.4th 134, 180 Cal.Rptr.3d 173 (2014) ...........................................7, 8

*Vandenberg v. Super. Ct.*
    21 Cal.4th 815, 982 P.2d 229 (1999) ................................................................10

**Statutes**

Health and Safety Code
    Section 7180.....................................................................................................1, 3, 9
    Section 7181...............................................................................................................1

**Rules**

California Rule of Court
    Rule8.104 ................................................................................................................11

Federal Rules of Civil Procedure
    Rule 12 ....................................................................................................................15

**Treatises**

D. Alan Shewmon, *"Brainstem Death," "Brain Death" and Death: A Critical Re-Evaluation
    of the Purported Evidence*, 14 Issues in Law & Med. 125, 126 (1998)...................9

REPLY IN SUPPORT OF MOTION TO DISMISS           3:15-cv-06042-HSG

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

The plaintiffs erroneously argue this Court must assume that Jahi McMath (McMath) is alive despite the Final Order and Judgment entered in the Probate Action that she is deceased under California law.  The issue of whether McMath is currently deceased is no different from the issue of whether McMath was deceased when she was pronounced dead at Children's Hospital on December 12, 2013.  Plaintiffs' position is not supported by the law, logic or medicine.  McMath was pronounced dead at Children's Hospital following independent examinations by two physicians in accordance with accepted medical standards and as required under sections 7180 and 7181 of the Health and Safety Code.  After a third independent examination by a court appointed medical expert confirmed that McMath was deceased, the Alameda Superior Court found McMath was deceased by clear and convincing evidence and entered a final judgment.  This judgment was never appealed.

Plaintiffs claim this case is set to address the issue of whether McMath is dead today and that the issue of whether she is dead today is somehow different from the issue of whether she was dead in December 2013 when the Final Order and Judgment was entered in the Probate Action.  There is no reason for this Court to examine the issue of whether McMath is "still deceased."  If the plaintiffs are not disputing that McMath was deceased in December 2013, they are therefore contending that, at some point between December 2013 and September 2014, McMath had a medically unprecedented recovery from death.  There is no possible way for this Court to examine whether McMath is dead today without disrupting the Final Order and Judgment confirming her death in the Probate Action in December 2013.

The logical absurdity of plaintiffs' current arguments is perhaps best illustrated through a juxtaposition of their past actions and current words.  If plaintiffs claim they are not challenging the finding that McMath met the definition of brain death in 2013, but are asking whether she meets the criteria for brain death in 2016, then are they implicitly accepting that she was legally deceased in December 2013?  If plaintiffs do not dispute McMath was deceased in December 2013, then why seek an order compelling Children's Hospital to keep her body on life support on December 20, 2013?  And, if plaintiffs do not dispute that McMath was deceased in December 2013, how can they now contend

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

that the Hospital was trying to "kill her" by removing her dead body from a ventilator?   Further, plaintiffs now claim McMath did not demonstrate recovery of brain function until the fall of 2014.  So, did they think she was previously dead or alive?  No matter how plaintiffs attempt to manipulate their argument, the issue of whether McMath is dead is the same today as it was in December 2013.

Furthermore, plaintiffs lament that this case should not be dismissed because doing so will deprive McMath, a person who is deceased under California law, of the "rights to life, liberty and the pursuit of happiness."  Again, the transparency of this argument is illustrated through an examination of plaintiffs' past actions.  Plaintiffs filed the Petition for Writ of Error Coram Nobis to challenge the Probate Action's Final Order and Judgment confirming McMath's Death in October 2014 based upon the same evidence cited in the instant Damages Litigation and the instant federal action.  Why dismiss that Petition after Judge Grillo made clear that he was willing to entertain it?  Then, why file the Damages Litigation and the instant federal action to rescind McMath's death certificate before a judicial determination is made that McMath is alive?  Plaintiffs claim they withdrew the Petition for Writ of Error after it became clear that "attempts at an informal dialogue between experts," including Dr. Fisher and plaintiffs' experts who do not accept the concept of brain death "[had] reached a final impasse." What makes plaintiffs think that any such dialogue is possible today or that there will be any different outcome in this case or the Damages Litigation? The public policies of ensuring an end to litigation, reliable application of the law and finality of judgments favor application of collateral estoppel – not the changed circumstances exception – to put a stop to the gamesmanship that is evident in this case.

As set forth in further detail below, in the briefs submitted by the Alameda County and State Defendants in their respective motions to dismiss, the Court has a variety of equally applicable legal bases upon which to dismiss this litigation, including, but not limited to the following:

- Dismissal as a matter of discretion under the Declaratory Judgment Act based upon the satisfaction of all elements set forth in *Brillhart* / *Wilton*;

- Dismissal based upon the principles of *res judicata* and collateral estoppel as plaintiffs are fundamentally barred from relitigating the issue of whether McMath is deceased under California law as the issue was decided in a State civil proceeding and the subject of a Final Order and Judgment that was never appealed; and

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

- Dismissal under the *Pullman* abstention doctrine as this case involves an issue of sensitive social policy the implicate issues of state law that can and should be decided in a state court with an uncertain result, and a decision on those issues (i.e., a finding that McMath is deceased) will moot her purported Constitutional claims here.

For each of these reasons, the Complaint should be dismissed.

## II.   THE COURT SHOULD EXERCISE DISCRETION TO DISMISS THIS CASE UNDER *BRILLHART* AND *WILTON*

Plaintiffs have not given this Court any reason to maintain jurisdiction of this case.  It should be dismissed as a matter of discretion under the Declaratory Judgment Act.

### A.   Dismissal Should Be Entered To Avoid Needless Determination Of State Law Issues

Plaintiffs have taken contradictory positions.  At one point, plaintiffs assert this case seeks "resolution of Federal issues arising out of Federal Law," ignoring that, earlier in the brief, they admit that the case was brought to obtain a declaration that McMath is alive.  (Plfs' Opp. To Motion (Docket No. 75) at 6:1 and 19:19.)  Plaintiffs have failed to identify the purported "federal issues of federal law" that would be subject to consideration in this case without first deciding whether McMath is alive under California law, and they failed to show why this issue must necessarily be decided here and not in the pending Damages Litigation in Alameda Superior Court.  To determine whether McMath is alive, the Court would have to apply the standards set forth in California Health & Safety Code section 7180, an issue of state, not federal, law. This issue can and should, be decided in Alameda Superior Court.

### B.   Dismissal Should Be Entered To Discourage Forum Shopping

Next, plaintiffs contend they have not engaged in forum shopping.  Although plaintiffs acknowledge the primary goal of this case is to obtain a declaration that McMath is alive (Plfs' Opp. To Motion (Docket No. 75) at 6:1), plaintiffs instead attempt to characterize this case as one to seek "redress for the violation of Federal statutes and the deprivation of Federal Constitutional Rights in a Federal Court," and thus separate and distinct from any of the five other legal proceedings they have initiated to adjudicate the issue of whether McMath is dead under California law.  (Plfs' Opp. To Motion

3

1   (Docket No. 75) at 20:3-4, (emphasis omitted).)  While McMath and Winkfield have asserted

2   constitutional claims, not one of those claims can or should be addressed without first deciding whether

3   McMath has standing as a living person who can assert those claims.  Both the issue of whether McMath

4   is dead, and if not, whether her alleged Constitutional rights have been violated can and should be

5   decided in connection with the a Superior Court Damages Litigation.  Plaintiffs fail to cite a single law

6   or reason precluding them from asserting any of these Constitutional claims in Alameda Superior Court

7   aside from their attorney's express desire to maintain the façade that he has no involvement in those

8   proceedings.  (See, Plfs' Opp., at p. 1, fn. 1.)

9          There is no question the instant federal action was brought for the sole purpose of gaining "'a

10  tactical advantage from litigating in a federal forum.'"  *R.R. St. & Co. Inc. v. Transport Ins. Co.*, 656

11  F.3d 966, 976 (9th Cir. 2011), *citing Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371-72

12  (9th Cir. 1991).  In October 2014, plaintiffs filed a Petition for Writ of Error Corum Nobis alleging that

13  McMath had exhibited "unequivocal evidence of brain function" and to enter a new judgment finding

14  McMath "does not meet the criteria for brain death."  (Writ of Error (Docket No. 69-4) at 3:1-2, 3:13-

15  14.)  In support of that Petition, plaintiffs cited much of the same "evidence" attached to the Complaint

16  in this case.  (Writ of Error (Docket No. 69-4).)  On September 30, 2014, Judge Grillo issued an Order

17  Appointing Dr. Fisher as the Court Expert Witness to consider the alleged evidence that McMath no

18  longer satisfied the criteria for brain death.  (Grillo Order 9/30/14 (Docket No. 69-6).)  Dr. Fisher issued

19  a preliminary report on October 6, 2014 indicating that he had reviewed the declarations of plaintiffs'

20  purported "experts," identified and refuted all of the alleged bases upon which these "experts" had

21  concluded McMath was not brain dead under accepted medical standards established under the

22  Guidelines established by the American Academy of Pediatrics and set forth the reasons for his

23  conclusion that none of those declarations or materials submitted by plaintiff either (1) demonstrate that

24  she is not currently brain dead or (2) refute his finding that McMath was brain dead in December 2013.

25  (Fisher Report (Docket No. 69-6), pp. 4-6.)

26         On October 8, 2014, just two days after Dr. Fisher's report was made public, plaintiffs withdrew

27  the Petition for Writ of Error Corum Nobis, claiming now that they did not believe they would obtain a

28  "full and fair hearing on the matter."  (CMO Confirming Withdrawal of Petition 10/8/14 (Docket No.

4

69-6); and Plfs' Opp., 8:20.)  Plaintiffs then turned around and filed the Damages Litigation on February 2, 2015 and the Second Federal Action on December 23, 2015.  Both actions seek identical relief to that requested in the Petition for Writ of Error: a judicial determination that McMath no longer satisfies the criteria for brain death under the UDDA.  (Plfs' Opp. To Writ Petition (Docket No. 69-10) at p. 10 ("the question before this court is should [McMath] be allowed to prove that she does not meet [the definition of brain death] now"); Plf's Opp. To Motion (Docket No. 75) at 5:2-4, 6:1-2 ("Plaintiffs request that this Court, for the first time in any forum, examine the overwhelming medical evidence that Jahi McMath currently exhibits function of numerous portions of her brain" and is therefore alive).)  Plaintiffs have repeatedly raised the issue of whether McMath is brain dead in multiple forums.  This current case is the textbook example of forum shopping.

### C.    Dismissal Should Be Entered To Avoid Duplicative Litigation

Third, dismissal of this litigation will serve the interest of avoiding duplicative litigation on the same issue.  Plaintiffs argue that the issue in the Damages Litigation "is whether [McMath] was dead in 2013."  (Plfs' Opp. To Motion (Docket No. 75) at 20:12.)  This representation blatantly contradicts statements made by plaintiffs' counsel in the Damages Litigation that "the question in this personal injury action is not whether Jahi McMath met the definition of brain death in December of 2013," but whether she should "be allowed to prove that she does not meet that definition now."  (Plfs' Opp. To Writ Petition (Docket No. 69-10) at p. 10.)  By plaintiffs' own admission, they are asking both this Court and the Alameda Superior Court to address identical issues:  whether McMath is dead today. There is no question this litigation will be duplicative of that pending in Alameda Superior Court.

Plaintiffs also erroneously contend that they have never filed a case to address McMath's current status.  (Plfs' Opp. To Motion (Docket No. 75) at 20:14-16.)  The 2014 Petition for Writ of Error Coram Nobis was filed to address the alleged change in McMath's neurological activity and to seek an order finding that she was no longer legally deceased.  (Writ of Error (Docket No. 69-4) at 2:24-27.)  Very clearly, the plaintiffs have filed an action to address the plaintiffs' current medical status and will likely continue to do so until a court stops them.

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

1

2

**III.   COLLATERAL ESTOPPEL APPLIES AND PRECLUDES THIS COURT FROM ASSUMING THAT MCMATH IS ALIVE**

3

4   Plaintiffs make no effort to dispute that all of the elements for collateral estoppel have been met

5   and that there is any reason not to apply the unappealed Final Order and Judgment entered in the Probate

6   Action to this case. The entire focus of Plaintiffs' opposition to the Moving Parties' arguments that

7   collateral estoppel applies is on convincing this Court to apply the ruling made by Judge Freedman on

8   the issue of collateral estoppel in the Damages Litigation that is currently under review by the California

9   Court of Appeal in connection with these Moving Parties' Petition for Writ of Mandate.  Plaintiffs'

10   request that this Court apply the decision made by a state Superior Court judge – which is currently

11   being evaluated by the Court of Appeal – in a pending civil lawsuit to preclusive effect in the instant

12   federal lawsuit is wholly improper and shines a spotlight on the reasons why this Court should abstain

13   from considering this lawsuit.  This begs the question, why didn't plaintiffs just bring this claim in the

14   Damages Litigation?  Plaintiffs have it wrong – they, not defendants, are collaterally estopped.

15   **A.   All Requirements For Applying Collateral Estoppel Have Been Satisfied**

16   Collateral estoppel applies to prevent relitigation of issues "necessarily decided in" the Probate

17   Action because all five criteria for applying the doctrine have been met.  *Evans v. Celotex* (1987) 194

18   Cal.App.3d 741, 744, 238 Cal.Rptr. 259, 260, *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 795 P.2d

19   1223, 1225 (1990) (defining criteria for applying collateral estoppel as: (1) identical issues; (2) actual

20   litigation of the issue in prior action; (3) the issue was necessarily decided in the prior proceeding; (4)

21   final decision on the merits in the prior proceeding; and (5) same parties in both actions).

22   Plaintiffs do not dispute that a final judgment entered in a probate action that was never appealed

23   is accorded greater preclusive effect than ordinary civil judgments and that such judgments are said to be

24   conclusive "against the whole world and not just the parties to the litigation." *In re Est. of Redfield*, 193

25   Cal.App.4th 1526, 1534, 124 Cal.Rptr.3d 402, 407 (2011).  Nor do they dispute that collateral estoppel

26   applies to judgments entered in probate actions and must be invoked in this case to preclude relitigation

27   of the issue of whether McMath is dead as all criteria for applying collateral estoppel have been met.

28   *Fairchild v. Bank of Am. Nat. Trust and Sav. Ass'n*, 165 Cal.App.2d 477, 484, 332 P.2d 101, 106 (1958).

1    Plaintiffs only argue whether McMath is legally dead today is different from the issue litigated

2    and decided in the Probate Action.  The issues are the same.  In the Probate Action, the court was

3    "necessarily required … to reach the threshold issue of whether [McMath] was legally dead" in order to

4    rule on Winkfield's *ex parte* petition to compel medical treatment.  (Final Order (Docket No. 69-2) at

5    35:24, fn. 2.)  The final decision by Judge Grillo in the Probate Action that McMath was legally

6    deceased was reflected in the Final Order and Judgment, which was not appealed.  (*Id.*, at 39, 48:20-22.)

7    As plaintiffs concede in their Opposition to the Motion to Dismiss, plaintiffs seek to litigate the

8    issue of whether McMath is legally deceased in the instant Federal Action.  (Plfs' Opp. To Motion

9    (Docket No. 75) at 6:1.)  Plaintiffs allege that there are new facts (changed circumstances) showing

10   McMath is alive, and that those facts warrant judicial declarations McMath "does not have irreversible

11   cessation [of] all functions of the entire brain, including the brain stem" and that "McMath is not dead."

12   (Docket No. 1 (Complaint) at ¶¶ 295, 303.)  While the plaintiffs acknowledge that McMath's death was

13   confirmed through entry of the Final Order and Judgment in the Probate Action, they argue "this Court

14   must assume that, in fact, [McMath] is alive" based upon these allegations.  (Plfs' Opp. To Motion

15   (Docket No. 75) 6:18-19.)   As discussed in further detail below, the changed circumstances exception

16   does not apply here.  Collateral estoppel applies.

### B.    The Changed Circumstances Exception To Collateral Estoppel Does Not Apply

19   Plaintiffs' entire opposition is rested upon the notion that this case seeks resolution of a new

20   issue and that, as a result, the changed circumstances exception to collateral estoppel applies.  It does

21   not.  In California, "[c]ollateral estoppel does not bar a later claim if new facts or changed circumstances

22   have occurred since the prior decision."  *Union P. R.R. Co. v. Santa Fe P. Pipelines, Inc.*, 231

23   Cal.App.4th 134, 179, 180 Cal.Rptr.3d 173 (2014).   Thus, "where there are changed conditions or new

24   facts which did not exist at the time of the prior judgment," collateral estoppel does not apply.  *Id*.  The

25   changed circumstances doctrine does not apply in every instance, particularly where the underlying

26   judgment was entered based upon an expert's opinion of facts that were not fixed or "immutable."  *Id.*,

27   at 181.  To illustrate, the court cited a hypothetical scenario in which "an expert testifies that the

28   defendant was professionally negligent."  *Id*.  The expert's "finding may well have issue preclusion

7

effect in subsequent litigation" even though the alleged "professional negligence is not an 'immutable physical fact.'" *Id.* So long as the "issue was litigated, decided, final and on the merits, collateral estoppel applies as between the same parties (or those in privity with them)." *Id.*

As made clear in *Evans v. Celotex, supra,* for purposes of deciding whether to apply collateral estoppel, it is important to distinguish between two different types of facts. On the one hand, there are facts which materially alter the issues to be decided in a lawsuit and, in essence, preclude the first element (identical issues) from being satisfied in the collateral estoppel test. On the other hand, there are facts which would have been considered and weighed by the court (or a jury) when deciding the issues presented. Facts that fall into this second category, had they been discovered prior to entry of judgment, would merely have lent to the weight of evidence considered by the fact finder in deciding the issue. Discovery of this second type of facts after entry of judgment does not preclude the first element of collateral estoppel from being satisfied. The court in *Evans,* cited by plaintiffs in their opposition brief, addressed this key distinction when deciding not to apply the changed circumstances exception, but instead upheld the trial court's decision to apply collateral estoppel.

In *Evans,* an asbestos wrongful death action, the plaintiffs argued the changed circumstances exception applied because "new facts" had occurred since entry of judgment in the earlier personal injury action brought by the decedent while he was still alive that changed the issue to be decided and, as a result, precluded application of collateral estoppel. *Evans*, *supra*, 194 Cal.App.3d at 748. The "new facts" cited by the heirs included results from a lung biopsy that could not have been performed while the decedent was still alive. *Id.*, at 744, 747. The court refused to find the new evidence contained in the post-mortem biopsy report constituted "changed circumstances," explaining that "[a]n exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation." *Id.*, at 748. This type of new evidence, the court explained, would have gone "to the weight of the evidence against [the employer]" had it been considered in the first action and therefore does not "not operate to prevent application of collateral estoppel." *Id.*

The *Evans* decision should be applied in this case to preclude application of the changed circumstances exception because the "new facts" cited by plaintiffs do not change the issue decided in the Probate Action into a new issue. Like the plaintiffs in *Evans*, who cited biopsy results obtained after

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

judgment was entered in the first case, plaintiffs in this case allege that new facts have been developed based upon testing performed after McMath's body was removed from Children's Hospital. Specifically, plaintiffs allege McMath has "shown signs of improving neurological function" and was subjected to an EEG and MRI in New Jersey. (Plfs' Opp. To Motion (Docket No. 75) at 11:18-25, 12:1-2.) Plaintiffs further contend that McMath has been examined by "competent physicians" who have issued declarations stating that McMath is alive. *Id.* Like the plaintiffs in *Evans*, who argued new biopsy results were evidence the decedent's injuries and death were caused by asbestos, the plaintiffs in this case argue that new test results show McMath is alive. However, like the "new facts" in *Evans*, the new facts in this case, which apparently came to light in or about September 2014, would have done nothing more than alter the weight of evidence considered by Judge Grillo in deciding whether McMath was alive or dead under California law and do not create a new issue subject to adjudication in this case.

One of the "competent physicians" who allegedly examined McMath and concluded she is alive is Alan Shewmon, M.D. (Complaint, Exh. B (Docket No. 1-2).) Dr. Shewmon has opined that McMath "is very much alive." *Id.* at 10. Yet, incidentally, Dr. Shewmon rejects the notion of "brain death" as a "formulation of death" and is therefore much like Dr. Paul Byrne, who Judge Grillo found likely incapable of applying the "accepted medical standards" to find McMath is deceased under California law even though all criteria had been met. (Docket No. 69-2 at p. 46); *see also* D. Alan Shewmon*, "Brainstem Death," "Brain Death" and Death: A Critical Re-Evaluation of the Purported Evidence*, 14 Issues in Law & Med. 125, 126 (1998) (Dr. Shewmon states that "I have come to reject all brain-based formulations of death" after "convert[ing] from atheism to theism" and developing "a particular interest in the relationships among brain, mind, body, and soul"). In short, plaintiffs' medical experts who claim McMath is not dead under California law effectively reject California law defining death as "irreversible cessation of all functions of the entire brain, including the brain stem" and should likely not be afforded the opportunity to opine on the issue. Health & Saf. Code, § 7180(a)(2).

In addition, like the plaintiffs in *Evans*, who maintained the same position in both lawsuits (that the decedent's injuries were caused by asbestos), the plaintiffs have maintained the same position throughout the course of all six legal proceedings: that McMath is alive. (Docket No. 69-2, pp. 6-11,

9

1   Docket No. 69-4, pp. 2-3.)  That they have allegedly discovered evidence that might better support this

2   position does not make the issue in this case any different from the one decided in the Probate Action.

3       Furthermore, the alleged "new facts" are not persuasive.  Dr. Paul Fisher, the court appointed

4   independent medical expert, who plaintiffs' counsel agreed was qualified to opine as to whether

5   McMath was brain dead, has determined that these "new facts" do not change his opinion that McMath

6   is legally deceased.  (Docket No. 69-6, pp. 4-6.)  In October 2014, not long after plaintiffs allegedly

7   discovered these "new facts" to support their position that McMath is alive, plaintiffs asked Judge Grillo

8   to revisit the issue in a Petition for Writ of Error Coram Nobis, but immediately withdrew the Petition

9   when Dr. Fisher issued a report finding those "new facts" did not alter his position that McMath is brain

10  dead.  (Docket No. 69-6, pp. 4-6, 35:21-22.)  Thus, plaintiffs' alleged "new facts" are nothing more than

11  later discovered evidence which Dr. Fisher found unpersuasive and which do not constitute changed

12  circumstances.

13

14  **IV.   PUBLIC POLICY FAVORS APPLICATION OF COLLATERAL ESTOPPEL**

15      As recognized by the court in *Evans*, "[a]n exception to collateral estoppel cannot be grounded

16  on the alleged discovery of more persuasive evidence.  Otherwise, there would be no end to litigation."

17  *Evans*, *supra*, 194 Cal.App.3d at 748.  This fundamental public policy favoring an end to litigation that

18  underlies the principles of *res judicata* and collateral estoppel has been recognized universally in

19  California courts.  *See, e.g., Jorgensen v. Jorgensen,* 32 Cal.2d 13, 18, 193 P.2d 728, 731-32 (1948)

20  ("underlying the principle of *res judicata* that there must be an end to litigation requires that the issues

21  involved in a case be set at rest by a final judgment"); *and Kulchar v. Kulchar*, 1 Cal.3d 467, 470, 462

22  P.2d 17, 18 (1969), (recognizing the "strong policy favoring finality of judgments" and an "end to

23  litigation").  As a matter of public policy, "collateral estoppel may apply even where the issue was

24  wrongly decided in the first action" because doing so serves the "integrity of the judicial system"

25  promotes "judicial economy" and helps avoid "vexatious litigation."  *Murphy v. Murphy*, 164

26  Cal.App.4th 376, 407, 78 Cal.Rptr.3d 784, 808 (2008).

27      Plaintiffs themselves have recognized that collateral estoppel is intended to apply where doing so

28  "comports with fairness and sound public policy."  *Vandenberg v. Super. Ct.*, 21 Cal.4th 815, 835, 982

REPLY IN SUPPORT OF MOTION TO DISMISS                          3:15-cv-06042-HSG

P.2d 229, 241-42 (1999).  The fundamental public policy of ensuring an end to litigation is served by application of collateral estoppel to this case.  Children's Hospital and Dr. Rosen have a right to rely upon the Final Order and Judgment entered in the Probate Action that simply confirmed that McMath had been correctly pronounced dead in accordance with the law on December 12, 2013.  As a matter of public policy, the Final Order and Judgment must not be upset.

Plaintiffs argue the interests of public policy are not served by applying collateral estoppel because McMath's death was decided in the context of a probate proceeding, which they characterize as being on a "rocket docket."  Plaintiffs cite no evidence or law to support this contention.  Plaintiffs also gloss over the fact that there was a multiple day hearing on a very narrow and limited issue – brain death.  Winkfield was afforded a full and fair opportunity to litigate the issue of whether McMath was legally deceased.  In fact, the law did not require a hearing to be held at all.  The California Supreme Court in *Dority v. Superior Court*, 145 Cal.App.3d 273, 193 Cal.Rptr. 288 (1983) recognized there is no "authority mandating that a court must make a determination brain death has occurred."  *Id.*, at 278.  Rather, the UDDA grants full authority for deciding whether a person has died to medical professionals requiring "only that the determination be made in accordance with accepted medical standards."  *Id.*  While there are circumstances in which a court may intervene, those circumstances are limited.  *Id.*

Despite Winkfield's arguments to the contrary, she was afforded a full and complete opportunity to litigate all issues pertinent to her Petition to Compel Medical Treatment, including the issue of whether McMath was legally deceased under the UDDA.  The plaintiffs now argue that those proceedings were conducted in "great urgency" and under "extreme time pressures," but have failed to cite a single document in the record to support these assertions.  In fact, the evidence contained in the record makes clear that Judge Grillo was extremely thorough, thoughtful and reasoned in the conduct of all proceedings in the course of the Probate Action, taking care to ensure that all applicable laws and procedural requirements were both addressed and followed.

Importantly, Winkfield did not challenge the procedure utilized by Judge Grillo in the Probate Action by filing an appeal.  When no appeal is taken from a judgment "within the time period allowed" under the California Rules of Court, the judgment becomes "final and unassailable."  *In re Est. of Redfield, supra*, 193 Cal.App.4th at 1534-35, 124 Cal.Rptr.3d 402, 407.  Under California Rule of Court

11

8.104, Winkfield was required to file a notice of appeal within 180 days after the Court's entry of judgment on January 17, 2014.  Though she claims now that facts warranting reconsideration of whether McMath is alive were not discovered until after the time to appeal had expired, she had reason to know all facts that would have supported an appeal in the Probate Action based upon denial of due process immediately upon entry of the Final Order and Judgment.  Yet, no appeal was ever taken.  Instead, she filed a series of collateral attacks to challenge Judge Grillo's brain death finding, including the Petition for Writ of Error Coram Nobis, which was withdrawn immediately after Dr. Fisher issued a report finding that the "new facts" cited by Winkfield did not alter his opinion that McMath was dead.  Having failed to appeal the Final Order and Judgment in the Probate Action, Winkfield is procedurally precluded from challenging the process through which judgment was entered in the Probate Action.

## V.    PULLMAN ABSTENTION IS APPROPRIATE

The vast majority of plaintiffs' opposition brief is focused upon opposing application of *Pullman* abstention to this case.  The *Pullman* Doctrine was raised as a basis for this court's abstention from deciding the issues in this case by the County of Alameda Defendants in their Motion to Dismiss which was briefed and argued before the Court on May 12, 2016.  At that hearing, the Court spent much time focused upon asking the parties questions about the doctrine's application.  The plaintiffs have clearly utilized their opposition brief as an improper effort to address the Court's concerns knowing that the County of Alameda Defendants would not have the opportunity to respond.

The *Pullman* Doctrine is meant to promote "harmonious functioning of the federal and state court systems."  *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998).  Three criteria must be met before abstention is appropriate:  (1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open, (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy, (3) The possibly determinative issue of state law is doubtful.  *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir.1996).  The plaintiffs suggest that the *Pullman* Doctrine does not apply because this "this Court needs to resolve no 'sensitive question of federal constitutional law' in order to rule on many of Plaintiffs' causes of action."

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

1    (Plfs' Opp. To Motion (Docket No. 75) at 23:18-20.)  Plaintiffs are incorrect.  The *Pullman* abstention

2    doctrine is a narrow exception to the district court's duty to decide cases properly before it which allows

3    postponement of the exercise of federal jurisdiction when "a federal constitutional issue ... might be

4    mooted or presented in a different posture by a state court determination of pertinent state law."  *C-Y*

5    *Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983).  This is the precise scenario here.

6        Each of *Pullman* requirements have been satisfied.  The issue of whether McMath is legally

7    deceased is a sensitive issue of social policy that implicitly questions the accepted medical standards

8    upon which we distinguish life from death and upon which California's Uniform Determination of

9    Death Act is premised.  This issue of state concern should not be entered by the federal courts.  And, as

10    evidenced by the plaintiffs' opposition to the Motion to Dismiss, harmonious function between the

11    Alameda Superior Court in the Damages Litigation and this Court in the instant litigation is simply not

12    possible.  The Court should exercise its discretion to dismiss this case under the *Pullman* Doctrine.

13        The constitutional issues raised by plaintiffs in this case can, and should ,be avoided in their

14    entirety.  McMath is deceased under California law and therefore has no rights to pursue any legal

15    action, let alone assert a constitutional claim that her rights as a deceased person have somehow been

16    violated.  A finding that a dead person has constitutional rights, including the right to bring a post-

17    mortem lawsuit will have a far reaching and detrimental impact across the judicial system.

18        The issue of state concern, namely, whether plaintiffs should be permitted to relitigate whether

19    McMath is deceased is being hotly contested both here and in state court.  While Children's Hospital

20    and Dr. Rosen are of the firm belief that plaintiffs should not be permitted to relitigate the issue, doubt

21    as to whether they will be permitted to do so has been cast by Judge Freedman in his ruling on these

22    parties' demurrers that McMath be allowed to assert a cause of action for personal injuries as though she

23    is alive notwithstanding the Final Order and Judgment that she is, in fact, deceased.

24        Plaintiffs have asked both this Court and the Alameda Superior Court to reconsider the issue of

25    whether McMath is deceased under California law.  Plaintiffs now contend that they may not ever have

26    the opportunity to try the issue in State Court because the issue of whether McMath is deceased will not

27    be reached until the issues of "duty, breach and causation" have first been decided.  Plaintiffs are

28    incorrect for multiple reasons.  First, the issue of whether McMath may proceed in the Damages

1   Litigation as though she is alive and assert a personal injury cause of action notwithstanding the Final

2   Order and Judgment is at the center of the Damages Litigation and is presently being considered by the

3   California Court of Appeal.  Thus, whether or not the issue of McMath is deceased may not be tried in

4   that case because the Court of Appeal may reverse the trial court's ruling and find that, as a matter of

5   law, she is barred from relitigating the issue which she never challenged on appeal.  Second, even if the

6   Court of Appeal does not reverse the trial court's decision, there is no factual or legal support for

7   plaintiffs' position that the issue of whether McMath is deceased will be tried last as there is no order

8   bifurcating any issue and, in fact, plaintiffs have withdrawn their motion to bifurcate.  Lastly, plaintiffs

9   argue that the issue of whether McMath is deceased may never be litigated because medical malpractice

10  actions often settle.  In making this argument, plaintiffs in this case – Winkfield and McMath – suggest

11  that they are somehow different from the plaintiffs in the Damages Litigation.  They are not.  While they

12  might be represented on paper by different counsel in the Damages Litigation, this does not change the

13  fact that Winkfield and McMath (though deceased and technically incapable of maintain a lawsuit in her

14  own name) are both named as plaintiffs in the Damages Litigation and have the right to decline a

15  settlement agreement that does not address the issues presented in the litigation.  *Pullman* abstention

16  should be applied.

17  **VI.   THE COURT SHOULD CONSIDER ALL EVIDENCE PROPERLY SUBJECT TO**
18  **      JUDICIAL NOTICE AND DENY PLAINTIFFS' MOTION TO STRIKE**

19          Plaintiffs' motion to strike the Request for Judicial Notice because the volume of documents

20  submitted amounts to an inundation of the Court with documents that are "only peripherally related to

21  the single question of fact which is relevant to this proceeding: Does Jahi McMath exhibit some signs of

22  function of any portion of her brain?"  The motion should be denied.

23          Courts may take judicial notice of "matters of public record," including court documents, under

24  Federal Rule of Evidence 201, and do so regularly in ruling on motions to dismiss without converting

25  those motions to summary judgment motions.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

26  2001); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002).  The Ninth Circuit goes so far

27  as to permit consideration of "documents not attached to a complaint" so long as "no party questions

28

REPLY IN SUPPORT OF MOTION TO DISMISS                          3:15-cv-06042-HSG

their authenticity and the complaint relies on those documents." *Harris v. County of Orange,* 682 F.3d 1126, 1132 (9th Cir. 2012).

Here, plaintiffs do not dispute the authenticity of any documents attached to the Request for Judicial Notice.  In fact, plaintiffs go so far as to make reference to many of the proceedings outlined in those documents.  Plaintiffs fail to recognize that the majority of documents submitted in the Request for Judicial Notice are from court records in the six legal proceedings initiated by plaintiffs themselves to address and challenge the finding that McMath had suffered brain death and is therefore dead under California law: the same core issue at bar in the instant federal action.  These documents are relevant to the inquiry of whether McMath is dead under California law, and whether this Court even has jurisdiction to revisit the issue which was confirmed through entry of a final order and judgment in the Probate Action in January 2014.  The motion to strike should be denied.

## VII.   CONCLUSION

For the reasons set forth in detail above, this court should dismiss the complaint under Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6).

DATED: June 10, 2016                    Respectfully submitted,

COLE PEDROZA LLP

/s/ Dana L. Stenvick
Dana L. Stenvick
Attorney for Defendants UCSF BENIOFF
CHILDREN'S HOSPITAL OAKLAND and
FREDERICK S. ROSEN, M.D.

REPLY IN SUPPORT OF MOTION TO DISMISS                    3:15-cv-06042-HSG

**CERTIFICATE OF SERVICE**

**Case Name:  McMath McMath (Minor) v. State of CA**          No.  **15-cv-06042**

I hereby certify that on June 10, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION BY CHILDREN'S HOSPITAL AND DR. ROSEN
TO DISMISS PLAINTIFFS' COMPLAINT AND JOINDER IN MOTIONS BY
ALAMEDA COUNTY AND STATE OF CALIFORNIA TO DISMISS OR STAY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 10, 2016, at San Marino, California.

Sara Mazzeo                                    /s/ *Sara Mazzeo*
_____          _____
             Declarant                                              Signature