1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    JAHI MCMATH, et al.,                    Case No.  15-cv-06042-HSG

          Plaintiffs,                        **ORDER GRANTING IN PART AND**
8                                            **DENYING IN PART MOTIONS TO**
          v.                                 **DISMISS AND STAYING CASE**
9
                                             Re: Dkt. Nos. 35, 48, 69
10   STATE OF CALIFORNIA, et al.,

          Defendants.
11

12

13          Pending before the Court are three motions:  (1) a motion to dismiss, or in the alternative

14   to stay, brought by Defendants State of California, California Department of Public Health, Tony

15   Agurto, and Dr. Karen Smith (together, the "State Defendants"), Dkt. No. 35; (2) a motion to

16   dismiss or to abstain brought by Defendants County of Alameda, Alameda County Department of

17   Public Health, Dr. Muntu Davis, Alameda County Coroner & Medical Examiner, Alameda

18   County Counsel, David Nefouse, Scott Dickey, Alameda County Clerk's Office, Patrick

19   O'Connell, Alameda County Sheriff's Office, and Jessica D. Horn (together, the "County

20   Defendants"), Dkt. No. 48; and (3) a motion to dismiss, or in the alternative stay, brought by

21   Intervenor Defendants UCSF Benioff Children's Hospital and Dr. Frederick S. Rosen, Dkt. No.

22   69.  For the reasons articulated below, the Court GRANTS IN PART and DENIES IN PART the

23   motions to dismiss, and STAYS this action.[1]

24

25   _____

26   [1] The parties have submitted several requests for judicial notice.  *See* Dkt. Nos. 36, 47, 52, 61, 63,
     69-1, 75-4, 77-1, 83.  The Court GRANTS the requests to take judicial notice of court documents
27   and filings in other actions because they are public documents that "can be accurately and readily
     determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid.
28   201(b).  Because the Court does not rely on the remainder of the documents that the parties have
     submitted for judicial notice, the Court DENIES AS MOOT the remainder of the parties' requests.

United States District Court
Northern District of California

United States District Court
Northern District of California

I.     **BACKGROUND**

A.     **Factual History**

This action arises out of a tragic sequence of events.  On December 9, 2013, Plaintiff Jahi McMath received a tonsillectomy and adenoidectomy at Children's Hospital Oakland[2] ("CHO"). Dkt. No. 1 ("Compl.") ¶ 1.  Following the routine surgery, Ms. McMath experienced excessive blood loss that eventually led to cardiac arrest.  *See id.* ¶¶ 1-5.  After extensive CPR and fluid administration, the CHO staff was able to restart Ms. McMath's heart, and Ms. McMath was placed on a ventilator.  *Id.* ¶ 6.  On December 12, 2013, CHO doctors officially pronounced Ms. McMath "brain dead."  *Id.* ¶ 8.

Despite Ms. McMath's official diagnosis of brain death, Ms. McMath's mother, Nailah Winkfield, continues to believe that her daughter is alive.  *See id.* ¶ 18.  As such, after filing several lawsuits, Winkfield secured a death certificate for Ms. McMath so that Winkfield could transport her to a medical facility in New Jersey where there is a religious exemption for brain death.  *See id.* ¶¶ 11-13.  Ms. McMath and Winkfield have remained in New Jersey since.  *See id.* ¶¶ 13-14, 19.

B.     **Procedural History**

On December 23, 2015, Plaintiffs Ms. McMath and Winkfield filed this action against the State Defendants and County Defendants, requesting (1) a declaration that Ms. McMath is not now and was never "brain dead" under California Health and Safety Code §§ 7180 and 7181; (2) an injunction requiring Defendants to invalidate Ms. McMath's Certificate of Death and expunge all related records; (3) a declaration that Ms. McMath has the right to receive healthcare as a living human being; and (4) a declaration that Ms. Winkfield has the right to exercise control over Ms. McMath's healthcare.  *See generally* Compl.  Plaintiffs assert claims under (i) 42 U.S.C. § 1983 for violations of their First, Fourth, Fifth, and Fourteenth Amendment rights; (ii) § 504 of the Federal Rehabilitation Act of 1973; (iii) the Americans with Disabilities Act; and (iv) the Religious Land Use and Institutionalized Persons Act.  *Id.*  At the May 12, 2016, hearing on

---

[2] Children's Hospital Oakland is now UCSF Benioff Children's Hospital Oakland.

United States District Court
Northern District of California

1  Defendants' motions to dismiss, the Court granted the Intervenor Defendants' motion to intervene.

2  Dkt. No. 68.

3      In addition to this lawsuit, there are five other proceedings arising from the same nucleus

4  of facts that warrant discussion:  (1) a 2013 state court probate action filed in Alameda Superior

5  Court ("Probate Action"); (2) a first federal action filed in 2013 ("2013 Federal Action"); (3) a

6  state court writ petition appealing the probate court's findings ("2013 Writ Petition"); (4) a 2014

7  petition for writ of error coram nobis requesting that the Alameda Superior Court overturn its

8  finding of brain death ("Petition for Writ of Error Coram Nobis"); and (5) a pending state court

9  action seeking either personal injury or wrongful death damages ("Damages Action").

10      **i.    Probate Action**

11      On December 20, 2013, Winkfield filed an action in Alameda County Superior Court

12  seeking an emergency ex parte temporary restraining order ("TRO") to prevent CHO from

13  removing Ms. McMath from life support and to require CHO to provide her with further medical

14  care.  Dkt. No. 69-2, Exh. A ("Ex Parte Petition") ¶¶ 4-5.  CHO opposed the Ex Parte Petition,

15  arguing that it had no duty to provide continuing medical support to Ms. McMath because she was

16  deceased as a result of brain death.  Dkt. No. 69-2, Exh. B.  After hearing testimony and evidence

17  from several physicians, including from court-appointed independent physician Dr. Paul Fisher,

18  Judge Grillo found by "clear and convincing evidence . . . on December 24, 2013, that [Ms.

19  McMath] had suffered brain death and was deceased as defined under Health and Safety Code

20  sections 7180 and 7181." Dkt. No. 36-2, Ex. D at 16:20-22.  Accordingly, Judge Grillo denied

21  Winkfield's Ex Parte Petition and ordered CHO to continue providing Ms. McMath with treatment

22  and support only until December 30, 2013, at 5:00 pm.  *Id.* at 1, 19.

23      On January 17, 2014, Judge Grillo denied Winkfield's renewed motion for a court order

24  requiring CHO to insert feeding and tracheal tubes into Ms. McMath.  Dkt. No. 36-2, Ex. E at 1-2.

25  Judge Grillo held that Ms. McMath had "been found to be brain dead pursuant to Health and

26  Safety Code sections 7180-7181," and thus the feeding and tracheal tubes "would arguably be

27  medically ineffective or contrary to generally accepted health care standards, or could violate

28  medical or ethical norms."  *Id.* at 2.  Thereafter, Judge Grillo entered final judgment denying

1    Winkfield's petition.  Dkt. No. 36-2, Ex. F.

2              **ii.    2013 Federal Action**

3              On December 30, 2013, Winkfield filed an action in the United States District Court for

4    the Northern District of California.  Compl. ¶ 64; Dkt. No. 69-3, Ex. F.  Among other relief,

5    Winkfield requested an injunction "precluding removal of ventilator support and mandating

6    introduction of nutritional support, insertion of a tracheostomy tube [and] gastric tube, and to

7    provide other medical treatments and protocols designed to promote [Ms. McMath's] maximum

8    level of medical improvement and provision of sufficient time for Plaintiff to locate an alternate

9    facility to care for [Ms. McMath] in accordance with her religious beliefs."  *Id.* at 15.

10             After attending a settlement conference with a Magistrate Judge, the parties were able to

11   reach a settlement that allowed Winkfield to remove her daughter from CHO.  Compl. ¶¶ 64-65.

12             **iii.    2013 Writ Petition**

13             Also on December 30, 2013, Ms. McMath, by and through Winkfield, petitioned the

14   California Court of Appeal for a writ of mandate directing the Alameda Superior Court to "reverse

15   and vacate its Order of December 26, 2013, denying Plaintiff Winkfield's Petition to continue life

16   support measures, and transfer the minor, McMath."  Dkt. No. 69-3, Ex. F at 1.  The Court of

17   Appeal temporarily stayed Judge Grillo's order for 24 hours in order to consider the writ petition

18   on its merits.  Dkt. No. 69-3, Ex. G at 1.  On January 6, 2014, the Court of Appeal denied as moot

19   Plaintiffs' petition for writ of mandate because Ms. McMath had been removed from CHO as a

20   result of the negotiated settlement in the 2013 Federal Action.  *Id.* at 3.

21             **iv.    Petition for Writ of Error Coram Nobis**

22             On October 3, 2014, Ms. McMath, by and through Winkfield, filed a Writ of Error Coram

23   Nobis in Alameda Superior Court.  Dkt. No. 69-4, Ex. K.  Plaintiffs requested that the Alameda

24   Superior Court reverse its determination that Ms. McMath had suffered brain death in light of new

25   evidence.  *Id.*

26             In response to the petition, Judge Grillo again appointed Dr. Fisher as the court-appointed

27   expert witness.  Dkt. No. 69-6, Ex. Q.  Plaintiffs' objected to Dr. Fisher's appointment, and

28   thereafter, on October 9, 2014, withdrew their Petition for Writ of Error Coram Nobis.  Dkt. No.

United States District Court
Northern District of California

69-6, Ex. R at 4.

In his order acknowledging Plaintiffs' withdrawal of their petition, Judge Grillo informed Plaintiffs that they could seek future relief in his court by requesting a case management conference at a later date. *Id.*

### v.   Damages Action

Finally, Plaintiffs and other family members have brought a medical malpractice action against Dr. Rosen and CHO that is currently proceeding in Alameda County Superior Court. *See* Dkt. No. 69-7, Ex. S. The Damages Action plaintiffs seek personal injury damages or, in the alternative, wrongful death damages. *Id.*

Dr. Rosen and CHO demurred to the first amended complaint in the Damages Action on the basis that Judge Grillo had already determined the fact of Ms. McMath's brain death in the Probate Action. Dkt. No. 69-7, Exs. T, U. According to Dr. Rosen and CHO, any personal injury claims were barred by, among other theories, collateral estoppel and res judicata. *Id.*

Judge Robert Freedman of Alameda County Superior Court overruled the demurrers brought by Dr. Rosen and CHO. Dkt. No. 69-7, Exs. W, X. Judge Freedman also certified two questions to the California Court of Appeal: (1) whether Judge Grillo's determination of brain death in the Probate Action is entitled to collateral estoppel in a subsequent civil case seeking personal injury damages and whether collateral estoppel on this basis should be determined at the pleading stage; and (2) whether Judge Grillo's determination of brain death in the Probate Action should be accorded finality for all purposes pertaining to Ms. McMath's brain death status unless Judge Grillo's order is set aside on appeal or otherwise. Dkt. No. 69-7, Ex. Y.

On July 12, 2016, the California Court of Appeal held that Dr. Rosen and CHO's argument that Judge Grillo's brain death determination is entitled to collateral estoppel "should not be resolved at the pleading stage." Dkt. No. 77-3, Ex. A at 3; *see also* Dkt. No. 83-1, Ex. B.

## II.   DISCUSSION

On March 3, 2016, the State Defendants filed a motion to dismiss, or in the alternative to stay, this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 35 ("State MTD"). The State Defendants move to dismiss or stay this action on four grounds: (i) the Court

1   lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; (ii) the complaint is barred

2   by the Eleventh Amendment because there is an insufficient nexus between the State Defendants

3   and the challenged acts; (iii) Plaintiffs' first through sixth claims fail to state a claim; and (iv) if

4   the Court declines to dismiss the complaint, the action should be stayed under *Colorado River*. *Id.*

5        On March 16, 2016, the County Defendants moved to dismiss the complaint or, in the

6   alternative, requested that the Court abstain from hearing the matter. Dkt. No. 48 ("County

7   MTD"). The County Defendants articulate three main arguments in support of their motion: (i)

8   Plaintiffs have failed to exhaust available state court procedures; (ii) the Court lacks subject matter

9   jurisdiction under the *Rooker-Feldman* doctrine; and (iii) the Court should abstain under the

10  *Younger* doctrine or other similar doctrines such as *Pullman*, *Colorado River*, and *Burford*. *Id.*

11       Finally, on May 20, 2016, the Intervenor Defendants moved to dismiss or stay this action.

12  Dkt. No. 69 ("Intervenors' MTD"). The Intervenor Defendants move to dismiss on three bases:

13  (i) reconsideration of Ms. McMath's brain death diagnosis is barred by the doctrines of res

14  judicata and collateral estoppel; (ii) the Court should decline to consider Plaintiffs' request for a

15  declaration that Ms. McMath is not brain dead under the Declaratory Judgment Act; and (iii) the

16  Court should dismiss the complaint based on "a host of legal doctrines" included in the State and

17  County Defendants' motions. *Id.*

18       The State Defendants, County Defendants, and Intervenor Defendants each join in each

19  other's arguments. *Id.* at 24; Dkt. No. 73 at 22:18-23:13.

20  **A.    Rule 12(b)(1) Legal Standard**

21       Rule 12(b)(1) allows a defendant to move for dismissal on the ground that a court lacks

22  jurisdiction over the subject matter of an action. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the

23  burden of establishing a court's subject matter jurisdiction. *See Assoc. of Am. Medical Colleges v.*

24  *United States*, 217 F.3d 770, 778-79 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of*

25  *America*, 511 U.S. 375, 376-78 (1994).

26       "A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack

27  federal jurisdiction either 'facially' or 'factually.'" *Thornhill Publishing Co., Inc. v. General Tel.*

28  *& Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In resolving a "facial" attack, a court limits its

inquiry to a plaintiff's allegations, which are taken as true, and construes the allegations in the light most favorable to the plaintiff. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## B. Rule 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## C. Analysis

The Court begins by addressing Defendants' argument that the Court lacks subject matter jurisdiction, then considers Defendants' alternate position that the Court should stay this action pending the outcome of California state court proceedings.

### i. *Rooker-Feldman* Doctrine

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' complaint under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine "bars federal courts from exercising subject-matter

7

1   jurisdiction over a proceeding in 'which a party losing in state court' seeks 'what in substance

2   would be appellate review of the state judgment in a United States district court, based on the

3   losing party's claim that the state judgment itself violates the loser's federal rights.'" *Doe v.*

4   *Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005–

5   06 (1994)).  The *Rooker-Feldman* doctrine applies unless Congress has granted federal district

6   courts statutory authority to review certain state court judgments.  *See id.*  The Ninth Circuit has

7   interpreted *Rooker-Feldman* to bar jurisdiction "[i]f a federal plaintiff asserts as a legal wrong an

8   allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on

9   that decision." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).  *Rooker-Feldman* does not bar

10   an action in which "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission

11   by an adverse party." *Id.*  If a district court finds that it lacks jurisdiction to hear an issue under

12   *Rooker-Feldman*, the court must also "refuse to decide any issue raised in the suit that is

13   'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*,

14   341 F.3d at 1158.

15         Here, *Rooker-Feldman* bars some, but not all, of Plaintiffs' claims.  In the Probate Action,

16   Judge Grillo found by "clear and convincing evidence . . . on December 24, 2013, that [Ms.

17   McMath] had suffered brain death and was deceased as defined under Health and Safety Code

18   sections 7180 and 7181." Dkt. No. 36-2, Ex. D at 16:20-22.  Thus, under *Rooker-Feldman*,

19   Plaintiffs cannot appeal Judge Grillo's determination that as of December 24, 2013, Ms. McMath

20   was "brain dead."  In other words, *Rooker-Feldman* prohibits Plaintiffs' request for a declaration

21   that Ms. McMath "did not suffer, on December 13, 2013, irreversible cessation of all functions of

22   the entire brain, including the brain stem" and that Ms. McMath "was not ever 'brain dead' by

23   pertinent California statute." *See, e.g.*, Compl. ¶¶ 249, 250.  However, Plaintiffs bring several

24   other claims, including a request "to present to a court for the first time evidence of [Ms.]

25   McMath's neurological function <u>subsequent to</u> the issuance of her facially invalid death

26   certificate." Dkt. No. 60 (Opp'n to State MTD") at 13.  Relatedly, Plaintiffs assert that

27   Defendants' failure to invalidate, correct, or amend Ms. McMath's death certificate in light of this

28   subsequent evidence violates her constitutional rights.  These claims founded on evidence not

United States District Court
Northern District of California

1    before Judge Grillo do not seek to appeal his judgment, nor are they so inextricably intertwined

2    with his judgment so as to deprive this Court of jurisdiction.

3        The Court finds that *Rooker-Feldman* deprives it of jurisdiction over Plaintiffs' claims that

4    Ms. McMath never experienced brain death and was not brain dead on December 24, 2013.

5    Accordingly, the Court GRANTS Defendants' requests to dismiss any such claims.  However, the

6    Court holds that Plaintiffs' remaining claims are not barred by *Rooker-Feldman* and DENIES

7    Defendants' request as to all other claims.

8            **ii.     Abstention**

9        Next, Defendants assert that the Court must stay or dismiss this action under a variety of

10   abstention doctrines, including *Colorado River*, *Younger*, *Pullman*, and *Burford*.  Because the

11   Court finds that *Pullman* abstention is appropriate, the Court declines to address the other potential

12   bases for abstaining from or staying this action.

13       *Pullman* abstention allows "federal courts to refrain from deciding sensitive federal

14   constitutional questions when state law issues may moot or narrow the constitutional questions."

15   *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003).  "Three factors must be present before a

16   district court may abstain under the *Pullman* doctrine:  (1) the complaint must involve a sensitive

17   area of social policy that is best left to the states to address; (2) a definitive ruling on the state

18   issues by a state court could obviate the need for federal constitutional adjudication by the federal

19   court; and (3) the proper resolution of the potentially determinative state law issue is uncertain."

20   *Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 939-40 (9th Cir. 2002), *as*

21   *amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002) (internal quotations omitted).

22   *Pullman* abstention requires all three of these factors and should be rarely applied "[i]n order to

23   give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal

24   constitutional claims."  *Porter*, 319 F.3d at 492.  If a court abstains under *Pullman*, the "federal

25   plaintiff must then seek[] a definitive ruling in the state courts on the state law questions before

26   returning to the federal forum."  *1049 Mkt. St. LLC v. City & Cty. of San Francisco*, No. C 15-

27   02075 JSW, 2015 WL 5676019, at *2 (N.D. Cal. Sept. 28, 2015) (*quoting San Remo Hotel v. City*

28   *& Cty. of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998)).

United States District Court
Northern District of California

9

The Court finds that all three of the *Pullman* factors are present here.  First, this action undeniably concerns sensitive areas of social policy best left to California to address:  California's definition of brain death under Health and Safety Code §§ 7180 and 7181, and whether a diagnosis of brain death under California law subsequently can — or must — be overturned as a result of new evidence.

Second, a definitive ruling from the California courts regarding the state's policies for making and revisiting a determination of brain death under §§ 7180 and 7181 could obviate the need for this Court to adjudicate the alleged violations of Plaintiffs' federal constitutional rights.  If the California courts conclude that §§ 7180 and 7181 permit or require a brain death diagnosis to be overturned as a result of new evidence, Defendants will be legally obligated to follow the California courts' guidance with respect to Ms. McMath's determination of brain death.  Such a finding in that forum could moot this entire action, which asserts violations of Plaintiffs' federal constitutional rights as a result of Defendants' refusal to "reconsider[] and correct[] . . . [Ms. McMath's] diagnosis of death."  *See* Compl. ¶ 15.  Additionally, there remains a chance that the parties to the Damages Action will litigate whether Ms. McMath is currently brain dead, and that litigation also has the potential to moot or substantially narrow the federal constitutional questions presented here.

Third, the proper resolution of the potentially determinative state law issue is uncertain.  "Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law."  *Pearl Inv. Co. v. City & Cty. of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985).  "Resolution of an issue of state law might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court."  *Id.*  The Court cannot envision an issue more novel and important than a state's policies surrounding a determination of death.  In a case of first impression, Plaintiffs argue that, notwithstanding the superior court's December 2013 determination of brain death in the Probate Action, Ms. McMath "has regained brain function."  Compl. ¶ 50.  Essentially, Plaintiffs argue that even if the Court were to accept the December 2013 determination as accurate when

10

United States District Court
Northern District of California

1  made, Ms. McMath now has come back to life.  In this unique and novel situation, this Court

2  cannot predict with any confidence how the California Supreme Court would interpret the finality

3  of a brain death diagnosis under Health and Safety Code §§ 7180 and 7181.  The uncertainty of

4  this issue is further underscored by the fact that in the Damages Action, the superior court has

5  held, and the California Court of Appeal has affirmed, that defendants' collateral estoppel

6  argument cannot be resolved at the pleading stage.  Dkt. No. 83-1, Ex. B; Dkt. No. 77-3 at 3; Dkt.

7  No. 69-7, Exs. W, X.  Accordingly, there remains an open question as to whether, under California

8  Health and Safety Code §§ 7180 and 7181, Ms. McMath's brain death diagnosis can or must be

9  overturned.

10      The Court finds that all three of the *Pullman* factors are present here, and this case thus

11  presents the rare situation in which *Pullman* abstention is warranted.  Accordingly, the Court

12  STAYS this action pending the outcome of Plaintiffs' efforts to seek a determinative ruling from

13  the California courts as to whether a brain death diagnosis under California Health and Safety

14  Code §§ 7180 and 7181 can or must be overturned based on subsequent evidence of brain

15  function.[3]

16  **III.   CONCLUSION**

17      For the reasons above, the Court GRANTS IN PART and DENIES IN PART Defendants'

18  motion to dismiss for lack of subject matter jurisdiction under *Rooker-Feldman*.  The Court

19  GRANTS the motion as to Plaintiffs' claims that Ms. McMath never experienced brain death and

20  was incorrectly found to be brain dead on December 24, 2013.  The Court DENIES the motion as

21  to the remainder of Plaintiffs' claims.

22  //

23  //

24  //

25  //

26

27  ───────────────

28  [3] Because the Court finds *Pullman* abstention appropriate here, the Court declines at this time to address the Defendants' remaining arguments in support of dismissing or staying the action.

11

1    In addition, the Court STAYS this action under the *Pullman* abstention doctrine pending

2  the outcome of Plaintiffs' efforts to seek a determinative ruling from the California courts as to

3  whether under California Health and Safety Code §§ 7180 and 7181 a brain death diagnosis can or

4  must be overturned based on subsequent evidence of brain function.  The parties shall file joint

5  status reports every 120 days updating the Court on the status of the Damages Action or any other

6  California state court action addressing the issues identified in this order.  The parties shall also

7  file a joint status update within 10 days of the issuance of a final judgment in the Damages Action

8  or any other California state court action addressing the issues identified in this order.

9    **IT IS SO ORDERED.**

10  Dated:  12/12/2016

11

12  HAYWOOD S. GILLIAM, JR.
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28